### HENRY HAMLIN *vs.* THE STATE.

The rules with regard to petitions for new trials for newly-discovered evidence in civil cases, apply to such petitions in criminal cases.

And they apply equally to capital cases; although, as an error here would be remediless, the court will be more inclined to give the petitioner the benefit of any doubt that may be raised in their minds by the new evidence.

It is one of these rules that the evidence must be sufficient to change the result if a new trial should be had.

The petitioner, a convict in the state prison, with a fellow-convict, made a plan of escape, by the connivance of one of the guard, but arming themselves with pistols to kill the night watchman if necessary. In the attempt an encounter with the night watchman took place and he was shot by one of them. On the trial the evidence was that the petitioner fired the shot, and he was found guilty of murder in the first degree. Held that newly-discovered evidence that the other convict fired the shot could not change the result upon another trial, as the prisoner in aiding and abetting was equally guilty.

And held that evidence that the original plan was to escape by the connivance of one of the guard and without violence, could not help the petitioner, inasmuch as it appeared that they both armed themselves for any encounter that might become necessary, and that he was with his fellow-convict in all the violence that followed.

After the prisoners left their cells they climbed to the top of the block of cells,

where they remained over two hours, waiting for an opportunity to attack the night watchman. During this time they both drank liquor to nerve themselves for the encounter. The petitioner now offered proof that he was so intoxicated at the time of the murder that he was not able to have a premeditated purpose and so could not be guilty of murder in the first degree. Whether the petitioner could in the circumstances have the benefit of that fact: *Quære.* The court was satisfied here that he was not so intoxicated as not to understand fully what he was doing, and held that that degree of intoxication could not affect the case.

Where on the trial the dying declarations of the murdered man had been given in evidence against the petitioner, and upon the petition for a new trial newly-discovered evidence was claimed to the effect that when the dying man made the declarations he dropped a word from which the witness inferred that he had some hope of living, it was held that this being a mere inference of the witness, not in itself evidence, and it not being stated what was said, the court could not regard it as entitled to consideration.

PETITION for a new trial upon an indictment for murder; brought to the Superior Court in Hartford County. The petitioner had been convicted upon the trial of murder in the first degree, and now sought a new trial upon the ground of newly-discovered evidence. The facts were found by the court and the case reserved for advice. The points decided by this court will be sufficiently understood without a statement of the facts, which would occupy much space.

*R. Welles* and *T. E. Steele,* for the petitioner.

*W. Hamersley,* State's Attorney, for the State.

PARK, C. J. The law on the subject of new trials for newly-discovered evidence, is well settled in this state by a long and uniform course of judicial decisions from our earliest reports down to the present time. The following are some of the leading cases on the subject. *Noyes* v. *Huntington,* Kirby, 282; *Lester* v. *The State,* 11 Conn., 418; *Norwich & Worcester R. R. Co.* v. *Cahill,* 18 Conn., 493; *Waller* v. *Graves,* 20 Conn., 310; *Parsons* v. *Platt,* 37 Conn., 563. These cases hold that to entitle a party to another trial on the ground of newly-discovered evidence, it must be made to appear that the evidence relied upon for such purpose was in fact newly-discovered; that it would be material to the issue on another trial; that it could not have been discovered and

produced on the former trial by the exercise of due diligence; that it must not be cumulative; and that it must be sufficient to produce a different result on another trial, should the cause be determined solely upon the law and the evidence.

The cases to which we have referred were generally civil ones, but the same rule applies to criminal cases. *Lester* v. *The State*, 11 Conn., 418.

It is true that, in the case of *Andersen* v. *The State*, 43 Conn., 514, the court say that the rules which govern in civil cases in relation to petitions for new trials for newly-discovered evidence, ought not to be applied in all their rigor to criminal cases where life is in question; still the court did not intend in that case to make any substantial departure from those rules. All that was intended by the language used was, that in cases of such serious character, and where an error would be so remediless, the court would be more inclined to give a condemned man the benefit of a doubt that might be raised in their minds by the newly-discovered evidence.

In the case before us we think it is clear that the evidence, claimed to have been newly-discovered, ought not to change the result upon a new trial, and would not do so if the case should be decided upon the law and the evidence.

It is said that the new evidence proves that Allen, the accomplice with the petitioner in the murder of Shipman, was the originator of the plan to escape, that he was the leader in the whole affair, that he procured the pistols and other instruments that were used; and, finally, that he was the one who actually committed the homicide.

All this may be true; but it is likewise true that the petitioner was present, aiding and abetting the whole undertaking; and as such aider and abettor he is equally guilty in a legal sense with the principal perpetrator, for the law takes no cognizance of the difference in respect to moral guilt between different persons who are engaged in the commission of a common crime, but lays the sin of the whole at the door of each one who participates in the act, whether he is the principal perpetrator, or is only aiding and abetting the com-

mission of the deed. Gen. Statutes, p. 545, sec. 3. And many common law cases might be cited in support of this rule.

All the evidence in the case tends to show that some time previous to the murder of Shipman the petitioner and Allen entered into a conspiracy to escape from the state prison at all hazards. They doubtless intended to avoid the necessity of taking human life, if the end they had in view could be accomplished without it; but if it should become necessary to take life, they resolved to take it rather than be thwarted in their purpose. To this end they armed themselves with deadly weapons, and made other preparations to carry their intent into execution. They knew the undertaking was a desperate one, especially as an armed watchman patrolled the prison during the night. And although it was their original plan to bribe one of the watchmen to allow them to escape early in the evening through one of the windows of the prison, still this window was strongly protected by iron bars, and their success depended upon their ability to remove one or more of the bars without making a noise that would attract the attention of other watchmen who were near at hand; and they knew that if this mode of escape should fail, their only remaining chance would be in a successful encounter with the night watchman of the prison. They provided for this contingency, and were prepared for the alternative when the plan failed, as it did. Under such circumstances the case should be considered precisely as it would have been if they had known at the outset that their attempt to escape would bring them face to face with the night watchman. But this is not all. When Shipman entered upon his duties at nine o'clock in the evening, instead of abandoning the undertaking, they made their way to the top of the block of cells, and there waited two hours or more for a favorable opportunity to commence the attack upon him. During this delay they had time enough to reflect, and to consider well the character of the transaction in which they were about to engage. But time and reflection produced no change in their purpose. They knew that Shipman was armed, that he was

a brave and determined man, and that he would perform his duty to the last extremity; but inasmuch as he stood between them and their escape, they were determined to effect it at any cost. They made the onset and Shipman was killed; and it matters but little by which of them he fell. They were both guilty of murder, wilfully, deliberately, and premeditately committed. Hence the new evidence, which tends to show that Allen was the originator of the plan to escape and was the principal perpetrator of the homicide, does not alter the character of the petitioner's participation in the deed.

It is further insisted that the new evidence tends to show that not only the original plan to escape, but the only plan in which the petitioner joined, contemplated an escape by the connivance of one of the prison guard and wholly without violence, and that the killing of Shipman by Allen was a departure from the arranged plan for which the petitioner ought not to be held responsible. But we think there clearly is no foundation for this claim. The petitioner entered upon the enterprise armed with a loaded revolver, and this is enough to refute the claim. But this is not all. When Shipman appeared a desperate encounter with him was inevitable. The petitioner knew this, and knew it for more than two hours before they began it. And when the contest commenced, the petitioner engaged in it with his revolver in his hand, and pursued Shipman, after repeated shots had been fired. Surely there is no foundation for this claim.

It is further claimed that the newly-discovered evidence of the Rev. Mr. Wooding would render the dying declarations of Shipman, which were received in evidence on the trial, inadmissible. This evidence is stated as follows:—"When in the presence of Shipman, after he was taken to his house, Shipman dropped a word from which I drew the conclusion that Shipman had some hope of recovery.".

It will be observed that it is not stated what the remark was that Shipman made from which the inference was drawn. Nothing is stated but the inference drawn by the witness, which would not be evidence should another trial be granted, and we can not regard it as entitled to consideration here.

Again, it is claimed that the newly-discovered evidence of Allen shows that the petitioner was so far intoxicated at the time of the homicide that he was incapable of forming a willful, deliberate, and premeditated purpose, and consequently was incapable of committing the crime of murder in the first degree.

This question was fully gone into on the trial of the petitioner, and it was then considered that he was capable of committing the crime beyond all reasonable doubt, and the question is, whether the testimony of Allen, an accomplice in the crime, is sufficient to create, in connection with the other evidence, a reasonable doubt on the subject. We fully assent to all the law that has been cited by the counsel of the petitioner on this question, and we shall consider it merely as. one of fact. *State* v. *Johnson*, 40 Conn., 136, and 41 Conn., 584. It will be observed that the newly-discovered testimony of Allen confines the drinking of spirituous liquors by the petitioner to the time when the petitioner and Allen were waiting on the top of the block of cells for a favorable opportunity for their attack upon Shipman. All their plans had previously been made; they had armed themselves to carry them into execution even by the taking of human life if necessary, and their plans had already been in part carried out before any resort was had to intoxicating liquors. It might well be questioned if intoxication was resorted to under these circumstances simply for the purpose of nerving themselves up to the desperate struggle that seemed inevitable if they would succeed, whether it would be of any avail as a matter of mitigation; but we choose to place our decision of the question upon another ground. We are entirely satisfied that the petitioner was so far sober that he fully understood the character of the transaction in which he was engaged. In the first place, these parties must have been under great excitement while waiting on the top of the block of cells, which would have a powerful tendency to prevent the effect of intoxicating liquors upon them. In the next place the petitioner himself makes no claim that he was intoxicated, or to any extent deprived of his self-possession,

but on the contrary he seemed to realize the importance of keeping sober, for he tried to prevent Allen from drinking too much, and gave him the bottle of liquor only to prevent discovery, when he said that he should cough unless he had it.

But it seems to us that the acts of the petitioner furnish conclusive evidence that his mental faculties were capable of fully comprehending the character of the transaction in which he was engaged, for on the instant that Shipman discovered them, he leaped down one tier of cells to the corridor of the fourth tier, and after running along that tier to get in advance of Shipman, he swung himself from that tier down to the third tier of cells, which was a hazardous feat that few could accomplish.

We have refrained from considering the other requisites for a new trial on the ground of newly-discovered evidence, choosing, in a case of this importance, to put our decision on the ground that a new trial would do the petitioner no good; for it is our duty to treat it as a case to be decided upon the law and the evidence.

We advise the Superior Court to deny the petition.

In this opinion the other judges concurred.