DONALD J. LOMBARDO *v.* STATE OF CONNECTICUT

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and DANNEHY, Js.

Argued November 9, 1976—decision released February 15, 1977

*Courtney B. Bourns,* for the appellant (plaintiff).

*Richard E. Maloney,* assistant state's attorney, with whom, on the brief, was *George D. Stoughton,* state's attorney, for the appellee (state).

LOISELLE, J. The plaintiff was convicted of a violation of General Statutes §§ 19-480 (a) and 19-452 in selling a cannabis-type drug. Upon appeal that conviction was sustained. *State* v. *Lombardo,* 163 Conn. 241, 304 A.2d 36. Lombardo petitioned for a new trial on the ground of newly discovered evidence. The trial court rendered judgment denying the petition and from that judgment this appeal has been taken.

At the trial in which Lombardo was convicted, two undercover agents testified that they purchased four kilos of marihuana from the defendant. The defendant denied the charges, and offered in his defense an alibi. The jury rendered a verdict of guilty.

At the original trial, the state offered evidence that Ronald Minas, a detective, had met a man, whom he identified in court as the defendant, in Wickham Park in Manchester four or five times during July, 1970, and that each time they had discussed a sale of marihuana. On the evening of July 22, 1970, Minas and his associate, Officer John C. Mayoros, met with Lombardo at Wickham Park and advised him that they wished to buy as much marihuana as possible for $1000. Plans were made for delivery the next morning at the park. Minas gave his telephone number to Lombardo, so that Lombardo could call him concerning the time for the sale. At about 9 a.m., July 23, 1970, Minas

received a telephone call at his home from Lombardo. Arrangements were made for the sale of four kilos of marihuana at Wickham Park at 11 a.m. that morning. Southern New England Telephone Company records showed a call from Lombardo's telephone to Minas' telephone on that day.

Minas and Mayoros, the two undercover officers, drove to Wickham Park. Shortly after 11 a.m. Lombardo drove up in a blue Ford. Dominick Lisella arrived in a white Pontiac registered to one Robert Majewski. Lisella opened the trunk of Lombardo's vehicle and a suitcase was opened which contained twenty-four kilos of a substance later identified as marihuana. Minas chose four kilos of this substance from the suitcase and Lombardo accepted $1000 from Mayoros. Minas was never more than two or three feet from Lombardo during the entire transaction.

At the original trial before the jury the defendant offered evidence concerning his claim of an alibi. This included testimony by the defendant and by a number of witnesses that on July 22, when the state's evidence put him at Wickham Park arranging for the marihuana sale, he was continuously with friends; that he attended a wake, visited someone at a hospital and returned home, but never went to Wickham Park. His alibi for the time of the sale the next day was based on his own testimony, and on the testimony of a friend who saw him at home, preparing to attend a funeral, without an operable car available, at about 11 a.m. on the 23rd, shortly before the state's evidence put him at the park selling marihuana. Another witness testified that she had telephoned Lombardo at his home and had spoken with him three or four times

between 11 a.m. and 12:30 p.m. on the 23rd, and that she picked him up at his home at 12:45 to go to a funeral.

Another witness for the defense was Robert Majewski, the owner of the white Pontiac mentioned by the state's witnesses. He testified that he spent the night of the 22nd at Lombardo's home, arriving when Lombardo returned with friends from the wake. He also testified that at 10 a.m. on the 23rd he, Dominick Lisella, and Richard Putinas drove the Majewski car to Wickham Park, leaving Lombardo at home in bed. At the park, Lisella and Putinas met "Ron" and "Jack" (presumably the two undercover agents, Ronald Minas and John Mayoros) and drove to a rear parking lot together. He, Majewski, had left the car and was helping two girls wax their car and did not see what went on in the rear lot. Although he was at the park all day on the 22nd and the 23rd, he did not see Lombardo at the park either day.

At the original trial Dominick Lisella also testified for the defense. He was a boyhood friend and neighbor of Lombardo, to whom he was like a brother. He testified that he met "Ron" and "Jack" on the evening of July 22nd and discussed "business" with them, but he did not see Lombardo at the park. He spent the night with Lombardo and made a telephone call the next morning from Lombardo's telephone, but he refused to tell to whom he made the call. After the call he went to the park with Putinas and Majewski. He met "Ron" and "Jack" at the park and went with them to the back parking lot. He declined to testify further on direct examination, claiming he might incriminate himself.

According to the memorandum of decision, five witnesses testified at the hearing on the petition for a new trial. The testimony of three of those witnesses was discounted by the court as merely cumulative or repetitious of testimony given at the trial. The "new evidence" which the plaintiff claims warrants a new trial is the testimony of Putinas, who did not testify at the original trial, and Lisella, who gave some testimony at the original trial but then invoked the fifth amendment. This "new" testimony is that on the evening of July 22, Lisella made arrangements with Minas and Mayoros for the sale of marihuana, that he made a telephone call to them from Lombardo's home on the morning of the 23rd, put a suitcase of marihuana in the trunk of Majewski's car, drove to the park with Majewski and Putinas, let Majewski out and drove to the back parking lot where he opened the trunk. Putinas and Lisella "participated" in the sale. Minas and Mayoros took the marihuana and gave Lisella the money. Lombardo was not present at the sale.

At the hearing, it was explained that Putinas had told Lombardo's counsel at the original trial that he would testify that he participated in the sale, but that on advice from his attorney he changed his mind. Lombardo's counsel issued a subpoena for him, but the sheriff could not find him. Counsel for Lombardo did not ask for a continuance because he concluded that after Lisella claimed the privilege against self-incrimination there was no hope Putinas would testify.

The court denied the petition for a new trial, concluding that the testimony of Lisella and Putinas was basically cumulative of testimony given by Majewski and others at the original trial and con-

tradictory to testimony of the undercover officers. It concluded that the case turned on the credibility of witnesses whom the jury had had an opportunity to observe, and that it did not appear that an injustice had been done or that a new trial with the additional testimony would result in a different verdict.

A petition for a new trial is addressed to the legal discretion of the trial court. *State* v. *Grimes*, 154 Conn. 314, 325, 228 A.2d 141; *Smith* v. *State*, 141 Conn. 202, 207, 104 A.2d 761. "The rules for granting a new trial on the ground of newly discovered evidence are well established. The evidence must, in fact, be newly discovered, material to the issue on a new trial, such that it could not have been discovered and produced on the former trial by the exercise of due diligence, not merely cumulative and likely to produce a different result. *Turner* v. *Scanlon*, 146 Conn. 149, 163, 148 A.2d 334." *Pass* v. *Pass*, 152 Conn. 508, 511, 208 A.2d 753; *Hamlin* v. *State*, 48 Conn. 92, 93.

It is true that in a capital case, which this is not, "[a]ll of the . . . rules [relating to new trials] are qualified . . . in the light of the principle laid down in *Andersen* v. *State*, 43 Conn. 514, 517, that 'in a case where human life is at stake, justice, as well as humanity, requires us to pause and consider before we apply those rules in all their rigor.' " *Taborsky* v. *State*, 142 Conn. 619, 623, 116 A.2d 433; *Hamlin* v. *State*, supra, 94.

Whether a new trial should be granted does not turn on whether the evidence is such that the jury *could* extend credibility to it. A petition for a new trial is a civil action. The plaintiff has the burden

of proof, by the preponderance of the evidence. "A petition will never be granted except on substantial grounds." *State* v. *Grimes,* supra, 325. The plaintiff must persuade the court that the new evidence he submits will *probably,* not merely possibly, result in a different verdict at a new trial, or that an injustice has been done. *Pradlik* v. *State,* 131 Conn. 682, 686, 41 A.2d 906. It is not sufficient for him to bring in new evidence from which a jury *could* find him not guilty—it must be evidence which persuades the judge that a jury *would* find him not guilty. Judge Cardozo of the New York Court of Appeals had occasion to consider this problem in a case when a new trial was sought because state witnesses had recanted their prior testimony. Concurring in affirming denial of the new trial, he rejected the view that a judge, faced with conflicting stories, should abandon the search for truth and turn it over to a jury. He said: "I think it was the duty of the trial judge to try the facts, and determine as best he could where the likelihood of the truth lay. . . . He was not at liberty to shift upon the shoulders of another jury his own responsibility." *People* v. *Shilitano,* 218 N.Y. 161, 180, 112 N.E. 733; see 58 Am. Jur. 2d, New Trial, § 166.

At first blush it might appear that where a person confesses to a crime and will testify to that effect, that testimony is of such weight that it is not only material to the issue of the innocence or guilt of an accused, but would necessarily also be likely to produce a different result. In this case, however, the evidence does not rise to that level. The evidence claimed to be new is that Lisella arranged for and made the sale, that Putinas was present at the time of the sale and "participated" in it, and

that Lombardo was not there. Analyzing this evidence, it does not contradict or add significantly to the evidence produced at the trial to the jury. At that trial, Majewski's testimony was that both Lisella and Putinas were at the scene of the sale. Lisella, before his refusal to continue to testify, stated that he was the one who had discussed "business" with the undercover agents the night before the sale, had made a telephone call on the next morning from Lombardo's house, had driven with Majewski and Putinas to Wickham Park, had met the undercover agents and went to the back parking lot. The undercover agents testified that at the parking lot Lisella was the one who opened the trunk of the vehicle; Lisella's participation in the sale was evidence which was produced by the state and stood uncontradicted by anyone. The only new contradictory evidence was that the money was passed to Lisella rather than to Lombardo, and that Lombardo was not there. At most, the testimony of Putinas makes him an interested observer. The totality of the new evidence boils down to being cumulative to the claimed alibi, which was the subject of extensive testimony at the jury trial.

In view of the evidence produced at the trial to the jury which made Lisella a participant, according to the state's witnesses and by inference from Majewski's and Lisella's own testimony, the claimed new evidence is not of the same substance as that which gave concern in *Smith* v. *State,* supra. Essentially, the whole story is one that the jury heard at the trial, although some facts which the jury might have inferred are filled in by the new testimony. The jury judged the credibility of the witnesses and found Lombardo guilty.

Under all the circumstances it cannot be said that the trial court abused its discretion in concluding that the evidence in all probability would not, if offered in a new trial, produce a different result, and in concluding that no injustice had been done.

There is no error.

In this opinion HOUSE, C. J., LONGO and DANNEHY, Js., concurred.

BOGDANSKI, J. (dissenting). The two confessions to the crime involved in this case by the witnesses Putinas and Lisella under oath cannot be characterized as merely cumulative evidence.

A motion for a new trial on the ground of newly discovered evidence should not be denied merely because the trial judge refuses to believe the evidence. The test to be applied in determining whether another trial should be granted is whether the evidence meets the five conditions enumerated in *Hamlin* v. *State,* 48 Conn. 92, 93, and whether the evidence is of such a nature that the jury, upon a new trial, could *reasonably* extend credibility to it.

The above test requires the trial judge to grant a new trial if he is satisfied that, regardless of his own disbelief in the trustworthiness of the new evidence, there is not only reasonable certainty that the evidence will be admitted at the new trial but also a reasonable probability that the jury will accept it. Had the trial court applied that test, it could logically have reached no other conclusion than that the plaintiff ought to have a new trial.

Nothing could be less cumulative than the confessions of Putinas and Lisella, and if the jury should accept those confessions as true—a contingency lying well within the field of reasonable probability—it would legally be impossible for them to reach any other conclusion than that the plaintiff is not guilty of the crime charged.[1]

The hard fact which neither reasoning, inferences nor wishful thinking can destroy is that the plaintiff is protesting his innocence, while two other persons

---

[1] At the hearing on the petition for a new trial, the following evidence was presented: "The witnesses Richard Putinas and Dominic Lisella were advised by their own counsel prior to the hearing on the petition for new trial not to testify at the hearing. They understood that they did not have to testify and that if they did their testimony could incriminate them and would be used against them. Messrs. Putinas and Lisella drove to Wickham Park . . . together on July 23, 1970 and participated in an illicit sale of marijuana in a back parking lot of the park about 11:00 a.m. Ronald Minas and Jack Mayoros, both police undercover narcotics agents, also were present and took part in the sale. Mr. Lisella set up the sale with Messrs. Minas and Mayoros on the night of July 22, agreeing to consummate it the next day . . . at 11:00 a.m. On the morning of July 23, Mr. Lisella telephoned Messrs. Minas and Mayoros from Mr. Lombardo's home before Mr. Lisella left for Wickham Park. Before driving to the park Mr. Lisella placed a suitcase containing marijuana in the trunk of his car. The car belonged to Robert Majewski and he was with Messrs. Putinas and Lisella when they arrived at the park. Mr. Majewski got out before Messrs. Putinas and Lisella drove to the back parking lot to complete the sale with Messrs. Minas and Mayoros. In the back parking lot Mr. Lisella opened the trunk and Messrs. Minas and Mayoros took four packages of marijuana from the trunk and gave Mr. Lisella the money for them. Donald Lombardo was not present in the back parking lot with Messrs. Putinas, Lisella, Minas and Mayoros and did not participate in the sale. Messrs. Putinas and Lisella were aware that Mr. Lombardo was subsequently arrested for making said sale of marijuana to Messrs. Minas and Mayoros. Messrs. Putinas and Lisella were asked by Mr. Lombardo to testify on his behalf at the criminal trial resulting from his arrest for making said sale. Thereafter, Mr. Putinas told Francis Vignati, counsel for Mr. Lombardo, that he participated in the sale and would take

have confessed not only to the commission of the offense but have also placed the plaintiff away from the scene of the crime.

The plaintiff is, in my judgment, entitled to a new trial.

the stand at the trial and admit this. Mr. Putinas was present in court at Mr. Lombardo's trial and was ready to testify that he was present at the sale and that Mr. Lombardo was not present and did not make the sale. Before testifying, however, he called his attorney, Charles Alfano, and Mr. Alfano advised him not to testify. Immediately following this telephone conversation with Mr. Alfano, Mr. Putinas left the court building, telling no one he was leaving. Thereafter, during the remainder of the trial, he did not return to the court and was not in communication with Mr. Lombardo or Mr. Vignati. Attorney Vignati issued a subpoena for Mr. Putinas when he learned that he had left the courthouse. He gave the subpoena to Sheriff Yacovone, known by him from previous experience to be reliable and conscientious and Sheriff Yacovone attempted to locate Mr. Putinas to serve him but was unable to find him and so reported to Attorney Vignati. Attorney Vignati concluded, after Mr. Lisella refused to testify further and after Mr. Putinas left the court and was unable to be located by Sheriff Yacovone, that there was no longer any hope of obtaining Mr. Putinas' self-incriminating testimony, and, therefore, there was no justification in asking for a continuance of the trial."