[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON SECOND COUNT OF SECOND AMENDED PETITION FOR NEW TRIAL
This civil action involves a petition for a new trial filed by Stefon Morant (petitioner) seeking to have the verdicts and judgments of guilty in his criminal trial set aside and that a new trial be ordered.
On June 8, 1994, before this court, a jury convicted the petitioner of two counts of felony murder. The victims of the murders were Ricardo Turner and Lamont Fields. On August 27, 1997, the convictions were affirmed by the Connecticut Supreme Court. State v. Morant, 242 Conn. 666, (1997).
The facts which gave rise to the aforesaid convictions are set forth in the opinion of the Supreme Court.
 In 1990, the defendant and Scott Lewis were partners engaged in the sale of drugs from a Clay Street house and on Exchange Street, both in New Haven. As part of this drug operation, Ricardo Turner stored drugs and cash in his second floor apartment at 634 Howard Avenue, New Haven. During the night of October 10 and the early morning hours of October 11, 1990, the defendant and Lewis were at the Clay Street house and discussed the possibility that Turner might take the money and leave. Ovil Ruiz and several other individuals who sold drugs for the defendant and Lewis were also present at the Clay Street house during this discussion.
Two handguns, a .357 caliber and a .38 caliber, were stored in the house. In the early morning hours of October 11, 1990, either the defendant or Lewis told Ruiz to get the guns, and Ruiz gave the guns to Lewis. The defendant, Lewis and Ruiz then proceeded to travel in Lewis' automobile to Turner's apartment on Howard Avenue. On the way, the defendant stated, "whatever happens, you know, keep it between us." At the apartment, the defendant and Lewis exited the automobile and Rub got into the driver's seat. Rub then waited in the car while the defendant and Lewis went inside. When the two of CT Page 9644 them entered the apartment house, the defendant was carrying the .38 caliber handgun and Lewis was carrying the .357 caliber handgun.
 The defendant and Lewis forced their way into Turner's apartment. They were in the apartment for thirty minutes when, shortly after 4 a.m., they fatally shot Turner and his roommate, Lamont Fields. Turner was shot in the head, the back and the side. The bullet that went into his side traveled through his body and into his left arm. Fields was shot twice in the back. One bullet passed through the floor and punctured a waterbed in the apartment below. All of the bullet fragments later recovered by police had been fired from a .357 caliber handgun.
 The defendant and Lewis then ran out of the apartment, down the stairs, and into the waiting car. The defendant took from the apartment a bag that contained money, and Lewis took another bag that contained several ounces of cocaine. As they drove away from the scene, Lewis asked the defendant whether the defendant thought he, Lewis had killed Turner and Fields. The defendant responded, "whatever happened, happened."
 In January, 1991, the defendant gave a statement to police in which he admitted that he was with Lewis during the early morning hours of October 11, 1990. He stated that Lewis was taking him home when Lewis stopped on Howard Avenue near the victims' apartment. The defendant stated that Lewis said "he had to take care of some business and would be right back, and that Lewis then entered the apartment building while the defendant waited in the car. The defendant further stated that Lewis was perspiring when he came running from the apartment building to the car five or ten minutes later.
The defendant also told police that Lewis sold narcotics and that, when he and Lewis stopped on Howard Avenue, he thought Lewis was going to take care of some drug related business. The defendant stated that the next day he learned that there had been a murder on Howard Avenue, an that a few days later, Lewis told the defendant that Lewis "did what [he] had to do" because one of the victims had owed Lewis "a couple dollars." The defendant further stated that at some later time he observed Lewis throw the gun that Lewis had used to commit the murders into the Mill River under the Chapel Street Bridge in New Haven. CT Page 9645
One of the claims made by the petitioner in the criminal trial was that of alibi. The petitioner produced four witnesses who gave testimony in an effort to support the claim that he was in South and North Carolina at the time of the killings.
In April, 1997, the petitioner, acting pro se, filed a one count petition for a new trial. On April 9, 1999, through counsel, the petitioner filed an amended three count petition for a new trial. On April 28, 1999, a second amended three count petition for a new trial was filed and this court began an evidentiary hearing on that petition. On April 29, 1999, the court declared a mistrial with respect to the first count, the third count was withdrawn, and, with the agreement of both counsel and the petitioner, the court continued to hear evidence solely relating to the second count.
The petition for a new trial has been brought pursuant to General Statutes § 52-270 which provides in pertinent part:
 Causes for which new trials may be granted. (a) The Superior Court may grant a new trial of any action that may come before it, for . . . the discovery of new evidence . . . or for other reasonable cause, according to the usual rules in such cases.
The second count alleges that "Since the trial, petitioner, through counsel, has discovered material evidence in his favor, which evidence he failed and/or was unable to discover before or during the trial, although he used all reasonable diligence in endeavoring to find testimony in his favor".
The "newly discovered evidence" is alleged to consist of three alibi witnesses. These three witnesses, Michelle Washington, Clarence Dixon, and Joseph Dease, did not testify in the 1994 criminal trial.
In order to succeed in this action, the petitioner has the burden of proof and must satisfy certain standards:
The petitioner must demonstrate, by a preponderance of the evidence, that: (1) the proffered evidence is newly discovered, such that it could not have been discovered earlier by the exercise of due diligence; (2) it would be material on a new trial; (3) it is not merely cumulative; and CT Page 9646 (4) it is likely to produce a different result in a new trial. Seebeck v. State, 246 Conn. 514, 535-36 (1998) (quoting Asherman v. State, 202 Conn. 429, 434 (1987));
In the opinion of the court the only one of the four standards which the petitioner has proven is that the additional alibi evidence would be material on a new trial. He has failed to prove that the evidence is newly discovered, such that it could not have been discovered earlier by the exercise of due diligence, that it is not merely cumulative, and that the new evidence, along with the evidence produced at the original trial, would be likely to produce a different result in a new trial.
With respect to whether the evidence is newly discovered each of the three additional alibi witnesses testified that the petitioner was with him or her in North and South Carolina at certain times which allegedly would support the claim that the petitioner was not in Connecticut at the time of the killings. Evidence which relates to where the petitioner was, who he was with, and what he was doing at certain highly significant times is not newly discovered evidence. See State v. Dortch,139 Conn. 317, 236 (1952); Zullo v. Zullo, 138 Conn. 717, (1952); State v.Horne, 19 Connecticut App. 111, 131, (1989).
Taking up the first requirement, we consider whether the court erred in ruling that the evidence that the plaintiff was in New York City on April 10, 1964, is newly discovered evidence. This evidence relates exclusively to the whereabouts of the plaintiff himself on that date. It is information about himself that, prior to trial, he had personal knowledge of from his own experience and activities. Such evidence is not, as a matter of law, newly discovered. Thus, in State v. Dortch, 139 Conn. 317, 326, the court said: "In the first place, this evidence was not newly discovered, because it related to actions of Dortch himself, of which he must have known." Similarly, in Zullo v. Zullo, 183 Conn. 717, the court held: "The evidence was not newly discovered. The exhibit in which it is summarized shows that each item was within the knowledge of the plaintiff herein at the time of the trial of the former case." The plaintiff seeks to avoid this "within-the-knowledge" rule by a claim that he has a "poor recollection of dates." Such a claim may justify a court in regarding the new evidence as newly remembered, but newly remembered evidence is not tantamount to newly discovered evidence. "Forgotten facts do not constitute newly CT Page 9647 discovered evidence, and the want of recollection of a fact, which by due diligence and attention might have been remembered, is not ground for a new trial." 39 Am. Jur. 169, New Trial, § 161. Malaspina v. Itts, 3 Conn. Cir. Ct. 651, 653-54 (1966).
Michelle Washington was a name familiar to the petitioner's criminal trial attorney Robert Sweeney, not as an alibi witness, but as the mother of the petitioner's child who resided in South Carolina with the child. That she resided in South Carolina was the reason given to Mr. Sweeney by the petitioner to explain why he would travel frequently to South Carolina. As far as Joe Dease and Clarence Dixon are concerned, the petitioner failed to establish whether he did or didn't remember them while preparing for the original trial, whether he did or didn't tell Mr. Sweeney about them, or if he didn't tell Mr. Sweeney why he didn't. The petitioner has failed to prove that any of these three witnesses were newly discovered witnesses who could not have been discovered earlier by the exercise of due diligence.
Even if the court found that the evidence to be offered by the three witnesses was newly discovered evidence, which the court does not find, the petitioner has failed to prove that the evidence is not cumulative. In the original 1994 criminal trial, the petitioner produced four witnesses to support his claim that he was in North and South Carolina at the time of the killings. Obviously the jury did not find this claim persuasive. He now wishes to offer three more witnesses to support the same alibi claim which was not accepted by the jury in the criminal trial. This is classic cumulative evidence. See Lombardo v. State,172 Conn. 385, 392 (1977); Summerville v. Warden, 229 Conn. 397,438-439 (1994).
The final essential requirement that the plaintiff has failed to prove is that the allegedly newly discovered evidence, in conjunction with the evidence presented at the criminal trial, would probably result in a different verdict at a new trial. SeeAsherman v. State, 202 Conn. 429, 434.
Whether a new trial should be granted does not turn on whether the evidence is such that the jury could extend credibility to it. A petition for a new trial is a civil action. The plaintiff has the burden of proof, by the preponderance of the evidence. "A petition will never be granted except on substantial grounds." State v. Grimes, CT Page 9648 supra, 325. The plaintiff must persuade the court that the new evidence he submits will probably, not merely possibly, result in a different verdict at a new trial, or that an injustice has been done. Pradlik v. State, 131 Conn. 682, 686, 41 A.2d 906. It is not sufficient for him to bring in new evidence from which a jury could find him not guilty-it must be evidence which persuades the judge that a jury would
find him not guilty. Lombardo v. State, 172 Conn. 385. 391.
The alibi evidence in the 1994 criminal trial came from several witnesses who testified in substance that the petitioner was in a car with two other people driving from place to place in North and South Carolina from the late afternoon of October 10, 1990 until the early morning of October 11th. The purpose of this trip was an unsuccessful effort to get a bond executed and notarized which was then to be used to obtain the release of the petitioner's brother Frank from jail in New Jersey. An additional alibi witness was the petitioner's mother who testified that she was in the New Haven area on October 11, 1990, and that on that date she had faxed documents to a bondsman in North Carolina that were to be used in an effort to get Frank released from jail. Certain documentary evidence indicated that this activity did occur on October 11, 1990. She also testified that the family did not tell her that Frank was in jail until after their efforts down in North Carolina to obtain a bond had been unsuccessful, and that she had been so informed three or four weeks before October 11th. This latter testimony was claimed by the state as establishing that the other alibi witnesses were incorrect with respect to the date that the petitioner was with them when they were attempting to get a bond executed. Further evidence relied on by the state to establish that the petitioner was in New Haven on October 11, 1990 was the introduction of the petitioner's taped statement to the police which tended to establish that the petitioner was in a car with Scott Lewis which went to the Howard Avenue address in the early morning hours of October 11, 1990 and that he stayed in the car while Scott Lewis entered the premises and committed the murders.
The alleged newly discovered alibi evidence, along with the criminal trial alibi evidence, is claimed by the petitioner to establish, even more convincingly than at the criminal trial, that the petitioner was in North and South Carolina in the early morning hours of October 11, 1990, when the murders were committed in New Haven. The court does not agree that the new alibi evidence was either credible or that its addition to the CT Page 9649 criminal trial evidence would probably result in a different verdict at a new trial.
During the presentation of the new alibi evidence there was testimony that it was a twelve and a half to thirteen hour automobile ride from New Haven to South Carolina. Since the killings occurred at about 4:00 a.m. on October 11, 1990, evidence that the petitioner was in South Carolina on October 12th
and 13th would be of little significance. Essentially all of the testimony of Mr. Dease and Mr. Dixon concerned their being with the petitioner on the 12th and 13th in connection with attending a football game in South Carolina on October 13th. In fact Mr. Dease and Mr. Dixon gave contradictory versions with respect to the petitioner's whereabouts during the late afternoon of October 12th, with each one of them claiming to have been with the petitioner at the same time in different cities. In addition, the testimony of Ms. Washington and Mr. Dixon in connection with seeing the petitioner during the day in North Carolina on October 10th was not persuasive. All three of these witnesses were testifying as to precise dates and times that occurred over eight years ago. Their memories had been refreshed during the past six or eight months in such ways as to cause this court to doubt the accuracy of their present memories.
When one evaluates all of the alibi evidence, new and old, it is inconsistent, contradictory and not persuasive. If a jury in a new trial were to be presented with all the evidence offered in the criminal trial plus the new alibi evidence, this court is firmly convinced that that jury would not reach a different result than did the jury in the 1994 criminal trial.
The petitioner has failed to prove, by a fair preponderance of the evidence, that the additional alibi evidence is newly discovered, such that it could not have been discovered earlier by the exercise of due diligence, or that it is not merely cumulative, or that it is likely to produce a different result in a new trial, or that an injustice has been done in this case.
Accordingly, the second amended petition for a new trial insofar as it is based on the second count is denied.
William L. Hadden, Jr. Judge Trial Referee CT Page 9650