[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: DISCOVERY
 I. INTRODUCTION
Richard E. Provost, petitioner, was convicted by a jury of Sexual Assault in the First Degree in violation of General Statute § 53a-70
(a) and Risk of Injury to a Child in violation of General Statute §53-21.[1]
The petitioner claims that the conviction of Richard Reardon (Reardon), M's second cousin, in 1996, for a sexual assault of M, after petitioner was convicted of a sexual assault of M, is newly discovered evidence. The petitioner further posits that all the psychiatric and other records take on a different significance when the conviction of Reardon is taken into account. The petitioner seeks, inter alia, by way of discovery, access to the mental health records of M and to voir dire M's mental health care providers.
The petitioner filed a Petition for a New Trial pursuant to General Statute § 52-270 and P.B. § 42-55. In furtherance of his claim the petitioner filed the following motions: Motion for In Camera Review and Voir Dire and Motion to Compel.
The state (respondent) filed Objections to Interrogatories and Discovery and filed a Motion to Quash Subpoenas.
The petitioner in his motions for discovery seeks disclosure of matters that are privileged. In a civil matter, under the circumstances of this case, privileged communications are not subject to disclosure. Accordingly, petitioner's Motion for In Camera Review and Voir Dire is DENIED.
The interrogatories petitioner seeks to have answered are immaterial to the issues before this court. Accordingly, petitioner's Motion to Compel CT Page 13834 is DENIED.[2]
The states Motion to Quash Subpoenas is GRANTED.
The court will reserve decision on the Petition for a New Trial.
 II. FACTS
At the commencement of the petitioner's trial on November 15, 1995, the assistant states attorney assigned to the case advised the petitioner[3]
that the alleged victim (M) had made recent accusations of sexual molestation against two other individuals: the victim's second cousin, Reardon, and also one RZ[4] and that the information concerning Reardon may be relevant to the proceeding.[5]
The opinion of the Appellate Court sets forth the following relevant facts. "During 1990 through 1991, the victim, M, a minor female, lived with her mother, J. In the winter of 1990, shortly before M's sixth birthday, J began dating the defendant, who was known to M as Rick. J often allowed the defendant to take M with him while he did errands, played racquetball, rode his motorcycle, and, on several occasions, the defendant was alone with M at his residence. J ended her relationship with the defendant in November, 1991.
"In January, 1994, M began exhibiting suicidal tendencies and a violent temper, often running away from home. J took M to the Wheeler Clinic in Plainville for a psychiatric evaluation. During the visit, M became severely agitated, had to be restrained, and was subsequently admitted to Mount Sinai Hospital in Hartford. Upon M's discharge from the hospital three days later, J and her sister, Darline, were informed by the hospital staff that M had a yeast infection and blood in her urine.
"Following her discharge from the hospital, M spent a night at Darline's home. After bathing M, Darline, concerned about M's infection, began to talk with M about `good touch and bad touch' in an effort to learn whether anyone had touched M inappropriately. M told Darline that `Rick, mom's boyfriend', had hurt her inside, kissed her on the mouth, and `[gone] to the bathroom' on her. Darline immediately informed J about M's disclosure, and then reported the allegations to the department of children and families on February 9, 1994." State v. Provost, supra,49 Conn. App. 57-58.
On December 1, 1995, the jury returned verdicts of guilty on both counts.
On or about September 3, 1996, Richard Reardon was convicted and CT Page 13835 sentenced on the charges of Sexual Assault in the First Degree and Injury or Risk of Injury to a Minor relevant to a sexual assault of M. (Docket No. HHD CR96-0095303 T). RZ was not arrested for any alleged sexual misconduct relevant to M.
 III. PETITIONER'S CLAIMS IN SUPPORT OF MOTIONS FOR DISCOVERY
The petitioner offers salient facts to the court (and some the court has gleaned from the record) and asks the court to make certain inferences from those facts relevant to the advancement of petitioner's claims concerning discovery.
The petitioner posits that the offenses of 1990-1991 (for which petitioner was convicted) never occurred. The petitioner further asserts that in the event M was sexually assaulted, the assaults occurred in the 1993-1994 time frame and were perpetrated by Richard Reardon and/or others. Any assault in 1993-1994 could not have been perpetrated by the petitioner because he had no access to the child (M) during that period of time.
The petitioner offers the following facts in further support of his claims. M could not recall either her age, school grade or other specifics as to the timing of the sexual assault by the petitioner.[6]
Petitioner has no history of criminal abuse of children before or since.
Petitioner further relates that in February 1994 M experienced severe psychiatric difficulties and it was at this time that M disclosed the allegations of sexual assault by the petitioner. It was also during this period that the family of M was informed that M had a yeast infection and blood in her urine. From her medical condition, and other facts, petitioner asks the court to infer that M was sexually active during the 1993-1994 period.
Petitioner expands upon the circumstances of the disclosure by M. The disclosure of sexual abuse by petitioner was made by M to her Aunt Darline, that the assailant was "Rick, mom's boyfriend." M never displayed or expressed any discomfort or uneasiness in the company of petitioner up to the time of the disclosure in February 1994. Rick Reardon is the second cousin of M. The petitioner asks this court to infer that Aunt Darline had an interest in protecting "Rick" Reardon because he was a family member; there was no such interest to protect "Rick" Provost, the petitioner; therefore, claims the petitioner, it is likely that due to manipulation, pressure or other improper motive, the victim implicated the petitioner. CT Page 13836
Also, petitioner claims, the fact that petitioner and Reardon have the same first name, Richard or "Rick", facilitates any manipulation or confusion.
The petitioner further asserts that at the time of the commencement of petitioner's trial in November of 1995 it was disclosed that just prior to trial M had been sexually assaulted by Richard Reardon and perhaps one other (RZ).
Petitioner asks this court to take notice that sexual predators of children are generally recidivists and that it is likely therefore that Reardon and/or others are responsible for other sexual assaults on M in the 1993-1994 time frame.
Petitioner further asserts that in 1996, subsequent to petitioner's trial, Richard Reardon was convicted of sexual assault upon M relevant to a previous molestation. Petitioner claims this further corroborates petitioner's position that Reardon was the likely perpetrator of sexual assaults upon M in 1993-94. Any sexual assault upon M in 1993-94, prior to M's disclosure in February 1994 of the assault by petitioner, would be relevant, claims petitioner, to the alternative source of the complainant's sexual knowledge.[7]
The petitioner further posits that R.Z. was never prosecuted for a sexual assault upon M. Petitioner claims that more than likely the non-prosecution is due to the lack of credibility of the complainant M; that hers was a false complaint. Petitioner claims this information is necessary in order to impeach M in a re-trial.
The petitioner claims that these proffered facts and any and all logical and reasonable inferences to be drawn therefrom provide a sufficient showing to authorize disclosure as requested.
 IV. DISCUSSION
A. DISCOVERY
1. PETITIONER'S MOTION FOR IN CAMERA REVIEW AND VOIR DIRE.
In petitioner's Motion for In Camera Review and Voir Dire the petitioner is seeking to review certain psychiatric records of the complainant M and to allow voir dire, with full participation by petitioner's counsel, of certain of complainant's mental health providers subpoenaed by the petitioner, in order to determine whether they are able to provide any information relevant to the Petition for a New Trial.[8]
CT Page 13837
The petitioner relies on case law in the area of criminal law to support his discovery requests. The criminal cases relied on by the petitioner are, generally, in the factual context of a complaining witness or other witness having testified on direct examination and opposing counsel is seeking access to psychiatric records of said witness in order that counsel can effectively cross-examine said witness. The claim is generally in the context of a sixth amendment right to confrontation under the U.S. Constitution. Petitioner's reliance on criminal cases wherein the defendant's constitutional right to confrontation is in issue and the court is called upon to balance the rights of the defendant with the privilege accorded a particular witness's communications, is misplaced.
The state indicated in argument that a petition for a new trial, being a civil matter, requires a higher burden of proof on the movant for discovery of privileged matters as contrasted with the standard in criminal cases. The state argued that the movant in pursuance of his discovery must demonstrate "a compelling need" for privileged matters he seeks to be disclosed. The state has provided no authority in support of its position.
a. Practice Book.
A petition for a new trial is a civil action. Lombardo v. State,172 Conn. 385, 390-91, 374 A.2d 1065 (1977). Connecticut Practice Book § 13-2 provides the standard for the scope of discovery and provides in relevant part: "In any civil action . . . where the judicial authority finds it reasonably probable that evidence outside the record will be required, a party may obtain . . . discovery of information or disclosure, production and inspection of papers, books or documents material to the subject matter involved in the pending action, which arenot privileged, whether the discovery or the disclosure relates to the claims or defense of the party seeking discovery. . . . Discovery shall be permitted if the disclosure sought would be of assistance in the prosecution or defense of the action. . . . It shall not be ground for objection that the information sought will be inadmissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence. . . ." (Emphasis added). Accordingly, PB § 13-2 exempts from its scope matters that are privileged.
b. Statutory Law.
Although testimonial privileges recognized at trial will be recognized in discovery, a confidential communication is immune from discovery on CT Page 13838 the ground of confidentiality only if it is the type of confidential communication to which the law accords the status of a communication privileged from disclosure. Jacques v. Cassidy, 28 Conn. Sup. 212, 229.
General Statutes § 52-146e[9] provides the privilege accorded to communications between a psychiatrist and a patient. General Statute § 52-146e (a) reads in relevant part: "All communications and records . . . shall be confidential and shall be subject to the provision of sections 52-146d to 52-146j, inclusive. Except as provided in sections52-146f to 52-146i, inclusive, no person may disclose or transmit any communications and records . . . without the consent of the patient or his authorized representative."
General Statutes § 52-146f (1) through (8) provides those statutory exceptions to the consent requirement wherein "the consent of the patient shall not be required for the disclosure or transmission of communications or records of the patient in the . . . situations as specifically limited."[10]
Pursuant to General Statute § 52-146d (2) "Communications and records" means all oral and written communications and records thereof relating to diagnosis or treatment of a patient's mental condition between the patient and a psychiatrist, or between a member of the patient's family and a psychiatrist, or between any of such persons and a person participating under the supervision of a psychiatrist in the accomplishment of the objectives of diagnosis and treatment, wherever made. . . ."
The petitioner does not challenge the applicability of General Statutes § 52-146e to the communications of M. Likewise, the petitioner makes no claim that he falls within any of the exceptions to the consent requirement provided in General Statutes 52-146f. Consent to disclosure by M has not been provided.
Accordingly, General Statues § 52-146e is applicable to M's communications to her health care providers. M's communications are privileged.
c. Case Law.
In Falco v. Institute of Living, 254 Conn. 321, 757 A.2d 571 (2000) the Connecticut Supreme Court reviewed the issue of whether the psychiatric-patient privilege against disclosure, pursuant to § 52-146e
is subject to any exceptions beyond those enacted by the legislature. CT Page 13839
The Supreme Court indicated in Falco, "As we have previously observed, [t]he people of this state enjoy a broad privilege in the confidentiality of their psychiatric communications and records; (Internal citations omitted.) and the principal purpose of the privilege is to give the patient an incentive to make full disclosure to a physician in order to obtain effective treatment free from the embarrassment and invasion of privacy which could result from a doctor's testimony. (Internal citations omitted). Accordingly, the exceptions to the general rule of nondisclosure of communications between psychiatrist and patient were drafted narrowly to ensure that the confidentiality of such communications would be protected unless important countervailing considerations required their disclosure. Id., 328.
The court further related, "It is just as clear that no exception [to the consent of the patient requirement] is available beyond those contained in § 52-146f." Id., 330. Again, the petitioner makes no claim that he falls within the purview of any of the exceptions of the consent requirement.
The court continued, "We have long held that . . . exceptions to statutes are to be strictly construed with doubts resolved in favor of the general rule rather than the exception. . . . [W]here express exceptions are made, the legal presumption is that the legislature did not intend to save other cases from the operation of the statute." (Citations omitted). Id. "With respect to § 52-146e, we have noted that the legislature has narrowly crafted the exceptions to the general rule against disclosure after carefully balancing the important countervailing considerations. (Citation omitted). The inference that we draw is that the legislature did not intend to save other cases from the general rule." Id.
The Supreme Court concluded "it is contrary to the language of the statute and the intent of the legislature for courts to make discretionary case by case determinations of when the privilege may be overridden." Id., 331. And that "the psychiatrist-patient privilege may be overridden only by legislatively enacted exceptions. . . ." Id., 333.
The petitioner makes no claim that he falls within the purview of the statutory exceptions of the consent requirement. This court has no authority to grant an exception to the consent requirement and authorize disclosure of privileged communications.
For the reasons indicated hereinabove, petitioner's Motion for In Camera Review and Voir Dire is DENIED. CT Page 13840
2. PETITIONER'S MOTION TO COMPEL.
The petitioner has filed a Motion to Compel the respondent to answer petitioner's First Set of Interrogatories and Request for Production of Documents and to overrule respondents objections, pursuant to PB §13-1, et seq.
The petitioner did withdraw from this court's consideration Interrogatories 9, 10, 11, 22, 23 and 24 as well as Requests for Production of Documents 6, 7, 8, 16, 17 and 18.
a. Relevancy and Materiality.
Pursuant to the Code of Evidence, "relevant evidence" means evidence having any tendency to make the existence of any fact that is material to the determination of the proceeding more probable or less probable than it would be without the evidence. Code, § 4.1. § 4.1 embodies the two separate components of common law: 1) probative value; and 2) materiality. See Code § 4.1 commentary.
Evidence is admissible only to prove material facts, that is to say, those facts directly in issue or those probative of matters in issue; evidence offered to prove other facts is "immaterial". § 4.1 expressly requires materiality as a condition to relevancy in providing that the factual proposition for which the evidence is offered must be "material to the determination of the proceeding. . . ." See Code § 4.1 commentary.
b. Petitioner's Theory Analyzed.
The facts proffered by the petitioner and reasonable inferences to be drawn therefrom may arguably be interpreted to suggest that there were sexual assaults perpetrated upon M by Reardon and/or others in 1993-1994. This proffer would not be relevant to the issues of the 1990-1991 sexual assault committed upon M for which petitioner was convicted.
In an attempt to make the proffered events of 1993-1994 relevant to petitioner's cause, petitioner simply posits that the sexual assault of M in 1990-1991 never occurred. In this way, petitioner shifts our focus from the events of 1990-1991 to the events of the 1993-1994 time frame.
Therefore, goes the theory, in the event M was sexually assaulted, the assaults occurred in 1993-1994 (not in 1990-1991). The petitioner CT Page 13841 continues, that in the event M was sexually assaulted in 1993-1994 the petitioner could not be the perpetrator because he had no access to M during this latter time period. Therefore, petitioner opines, any sexual assault of M in 1993-1994 was the act (s) of third party assailant (s).
Positing that the sexual assault of M did not occur in 1990-1991 is the foundation of petitioner's theory of third party culpability and a challenge to the credibility of M and Aunt Darline. This theory obviates the necessity of petitioner providing linkage of any third party suspects to the events of 1990-1991.
In order for the court to assess the viability of petitioner's claim and assign to it whatever weight is reasonable the court did review the trial testimony in its entirety.
A petitioner has the authority in a petition for new trial to challenge the "who" (the identity of the assailant) the "what" (the nature of the crime (s)) and the "when" of the crime of which the petitioner was convicted.
Relevant to the challenge to the "when" — the time the crime was committed the court reviewed, inter alia, the trial testimony of M.
On November 15, 1995, M did testify at the trial of petitioner. At the time of her testimony M was eleven years of age and in the sixth grade. (T. November, 15, 1995, p. 190).
M identified the petitioner at trial and testified that she knew petitioner because her mother was dating petitioner at the time (T. p. 197). M did not recall what grade of school she was in at the time (T. 197-98). M recalled accompanying petitioner when he went to play racquetball (T. 200, 210-13), and recalled riding on petitioner's motorcycle with him (T. 201-02). M also recalled that in the area behind petitioner's apartment there were cows and a corn field and she would feed the cows (T. 204) and there was a stream where they built a dam so that they could swim in it (T. 205). M described the interior of petitioner's apartment (T. 205-207) and M described where she slept when she and her mother spent the night at petitioner's apartment (T. 207). M related a time when she accompanied petitioner to his residence for a change of clothes for petitioner. (T. 213-15) and related circumstances of the sexual assault (T. 215-220, 232-34). M also related that sexual incidences occurred on more than one occasion (T. 220-21). M recounted that she did not tell her mother of the assault and did eventually tell her "aunt" "last year" (T. 222-23) and that she related the assaults to health care providers and police (T. 223-224). CT Page 13842
Cross-examination is recorded in the transcript from pages 234 to 270. The cross-examination confirmed that M did not recall what year she was in the first grade (T. 241) and did not recall the duration of the time M's mother socialized with petitioner nor whether she was in kindergarten at the time (T. 243) and did not recall what school she attended during that period or what grade she was in (T. 248).
There is much in the direct and cross-examination that M did not recall that this court does not intend to repeat. However, the court cannot infer anything from M's lack of memory, under the circumstances, other than the natural vagaries of memory after the passage of time.
The issue of credibility of M and all other witnesses is the determination of the trier of fact. The trier of fact, the jury, determined M to be credible.
There is nothing in the direct or cross-examination of M (or any of the other witnesses) that would allow this court to infer that the complainant was in any way confused relevant to the identity of the petitioner as the perpetrator and, hence, inferentially, the timing of the offense.
It is noteworthy that the Appellate Court related, "Moreover, there was no evidence to suggest that M was in any way confused or uncertain about her statement that the alleged perpetrator was the defendant." Provost,49 Conn. App. 56, 61-62 (1998). A careful review of the trial transcript compels this court to agree.
It has been proven beyond a reasonable doubt that a crime did occur in 1990-1991 relevant to M. The fact that the petitioner is attacking that prior trial proceeding and its result in this collateral proceeding does not invalidate that which occurred at the trial.[11]
This court, like the trier of fact, is entitled to draw all reasonable and logical inferences based on the facts proved. State v. Englehart,158 Conn. 117, 121, 256 A.2d 231 (1969). Inferences should be based on probabilities, not possibilities, surmise, or conjecture. Hennessey v.Hennessey, 145 Conn. 211, 214-215, 140 A.2d 473 (1958).
Based upon review of the record and the facts proffered and any and all reasonable and logical inferences to be drawn therefrom, the court cannot make the quantum leaps petitioner seeks.
For example, that RZ is alleged to have sexually abused M and has not CT Page 13843 been arrested, the petitioner asks this court to infer that the decision not to prosecute RZ is based upon a determination by the state that the allegation against RZ was a false allegation in order that M's credibility may be challenged.
To infer from the lack of prosecution of RZ that M is not credible is not a reasonable or logical inference. The criminal justice system gives prosecutors a wide latitude and broad discretion in determining when, who, why and whether to prosecute for violations of the criminal law. (Internal citation omitted). State v. Corchado, 200 Conn. 453, 460
(1986).
There exists a myriad of reasons why an individual may not be prosecuted. Absent a claim of malfeasance, it is within the discretion of the states attorney to make the determination. On the facts submitted the court cannot make the requested inferences of falsity by M. It is simply in the realm of speculation.
So also in the realm of speculation — that Aunt Darline because of the familial relationship with Reardon — manipulated M to implicate petitioner.
Based upon a review of the record the court finds that the petitioner did not demonstrate to any degree of sufficiency that the offenses of 1990-1991 did not occur at that time.
Evidence is admissible only to prove material facts, that is to say, those facts directly in issue or those probative of matters in issue. The matter in issue is whether the suspected sexual assault of M by Reardon and/or others is material to the issue of petitioner's culpability. The court must answer the inquiry in the negative.
Hence, the interrogatories relevant to the circumstances surrounding Reardon and RZ and the events of 1993-1994 are immaterial. They are not reasonably calculated to lead to the discovery of evidence which would be admissible to prove who committed the 1990-1991 sexual assaults of M. P.B. § 13-2.
The petitioner has failed to establish a nexus between the proffered evidence of sexual abuse in 1993/1994 and material facts or issues in the case. The petitioner did not establish a factual foundation for the relief requested.
d. Rulings CT Page 13844
Interrogatories No. 1 through 8 and 11 and 12 apply to Mr. Richard Reardon. These is nothing in the record or any reasonable inferences to be drawn from the record that implicates Reardon in the crime (s) of 1990-1991. The information petitioner seeks is immaterial to the issues before the court. The objections of the state are sustained.
Interrogatories No. 14 through 21 and 25 apply to RZ. There is nothing in the record or any reasonable inferences to be drawn from the record that implicates RZ in the crimes of 1990-1991. The information petitioner seeks is immaterial to the issues before the court. The objections by the state to said interrogatories are sustained.
Interrogatories No. 13 and No. 26 relate to police reports of both the Southington and Bristol Police Departments relevant to any reported sexual assault upon M by Reardon and RZ, respectively.
The record reveals that the trial court did request of the assistant state's attorney that this information concerning any assaults upon M by Reardon and/or RZ or others be provided to the defense. The state's attorney did indicate that said inquiry would be made. (Transcript, 11/17/95 p. 516-518). This court could locate nothing further in the record relevant to compliance with the court's request.
This court is mindful that a qualified law enforcement privilege relevant to police incident reports does exist that our courts have long recognized. (Internal citation omitted). Information disclosed to a state's attorney for the purpose of enabling him to perform the duties of the office is privileged upon grounds of public policy, and an adverse party has no right to demand its production. Seebeck v. State,246 Conn. 514, 545-46 (1998).
In the case at bar at the commencement of trial the assistant state's attorney represented that M recently disclosed sexual assaults by two others, Reardon and RZ.
The petitioner claims, inter alia, that the information he seeks to be disclosed may reasonably be material in the event that the information shows an alternative source of the complainant's sexual knowledge. (Transcript, January 7, 2002, page 50).
It is noteworthy that in argument the petitioner represents that the sexual abuse by Reardon occurred prior to M's disclosure of the sexual abuse by petitioner. The record reflects that M first disclosed the abuse by petitioner on or about February 4, 1994. The record further reflects that the sexual abuse upon M by Reardon occurred in 1995 after the CT Page 13845 disclosure concerning the petitioner.
The basis of petitioner's proffer that the sexual abuse of M occurredbefore the February 4 disclosure is the comments of the assistant state's attorney that the alleged assault upon M by Reardon occurred ". . . I believe that the date was sometime in the end of 1993, beginning of 1994, which would have been around — just before the time of the disclosure in this incident." (See page 2, footnote 3 and page 3 footnote 5).
Thus, claims petitioner, relying on State v. Rolon, 257 Conn. 156,777 A.2d 604 (2001), in the event that the sexual assault by Reardon occurred before the February 4, 1994, disclosure relevant to petitioner, the assault by Reardon is the source of complainant's sexual knowledge and is information relevant to the impeachment of M in any new trial.
The petitioner has not made a sufficient showing for this court to order the relevant police incident reports disclosed. The petitioner has not provided sufficient evidence suggesting that the identity of Reardon or RZ or others, or any police reports regarding interviews with them, would be exculpatory, or would be material to the issues before this court.
However, under the circumstances, where the trial court requested that the reports be provided, combined with the comments of the assistant states attorney at the commencement of trial and in the interests of justice, this court orders that all police reports and/or any other documents alleging or containing information relevant to the sexual abuse of M by anyone for the years 1993, 1994 and 1995 (whether or not an arrest occurred) are to be submitted to the court under seal within 15 days of the filing of this memorandum in order for the court to conduct an in camera review.
Whether disclosure of the content is to be provided to the petitioner or not, the reports would remain sealed and be a part of the permanent record to assist any appellate review that may occur.
3. RESPONDENT'S AND WHEELER CLINIC'S MOTIONS TO QUASH SUBPOENAS.
The respondent, State of Connecticut, and Wheeler Clinic moves this court to quash subpoenas pursuant to Practice Book § 13-28(e).
The subpoenas seek production of materials from the custodian of the records of the following:
CT Page 13846
 1. Connecticut Children's Hospital
2. Wheeler Clinic
3. Department of Children and Families[12]
4. Pamela Neary of Wheeler Clinic
5. Jean Hagan of Connecticut Children's Hospital
6. Cynthia Leach-Evans
7. Iris Sanchez
8. Felicia Morgan of Connecticut Children's Hospital
The subject matter of the respective subpoenas concerns production/disclosure of matters which this court has determined to be privileged. Accordingly, the subpoenas seek matters not subject to disclosure.
The objections of the petitioner are overruled. The Motions to Quash the Subpoenas are GRANTED.
4. PETITION FOR NEW TRIAL.
The court will reserve on the Petition for New Trial until 15 days from the notice of the court decision relevant to release to petitioner of the contents of the police reports. Depending on that content, the court may reconsider any and all discovery orders herein enunciated.
 ___________________, J. Miano