ZOLTAN PRADLIK *v.* STATE OF CONNECTICUT.

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, Js.

Argued February 6—decided March 8, 1945.

*Joseph L. Shulman,* for the appellant (plaintiff).

*Lorin W. Willis,* state's attorney, with whom, on the brief, was *Otto J. Saur,* assistant state's attorney, for the appellee (defendant).

*Edwin Borchard* filed a brief as amicus curiae which the court declined to receive for reasons noted below█

DICKENSON, J. This is a petition for a new trial upon the ground of newly discovered evidence. The claim is that an accomplice who has been a witness at the original trial subsequently recanted and exonerated the plaintiff of complicity in crimes of which the accomplice was convicted. The action is brought under General Statutes, § 5701, which contains a provision that a new trial may be granted in any cause upon discovery of new evidence. The trial court ruled that the evidence offered was not newly discovered and was not likely to bring about a different result in event a new trial was had, and denied the petition. The plaintiff has appealed, assigning error in the court's refusal to add certain facts to the finding, in its conclusions and in a ruling excluding a certain deposition.

Most of the essential claims in the draft finding are included in the finding, which is not otherwise attacked. From the finding, and the transcript of evidence on the original trial, made a part of the complaint by reference and admitted in the answer, the undisputed facts may be summarized as follows: The plaintiff, an ex-convict, and Thomas Howard, whom the plaintiff called the "Kid" and had known for sev-

eral years, met in a tavern, consumed some intoxicating liquor and went to the plaintiff's home. There the plaintiff showed Howard a revolver. This the latter used in subsequent robberies that he committed that evening. They left the plaintiff's home in his car, which the plaintiff drove to or near three different stores or places of business where he remained in the car while Howard robbed the proprietors at the point of the revolver. While driving away from the third place, they were pursued by a police officer who overtook them with his car and ordered them to stop. Instead, the plaintiff turned down a side street and put on speed in an attempt to escape, at times driving up to sixty miles an hour, but was caught in a dead-end street after a chase of several miles. When arrested, Howard stated to the police that the plaintiff had nothing to do with the robberies, for which he alone was responsible. Later, when told by a police officer that his story was fantastic and untrue, and informed that it would be better for him to tell the truth, he stated that the plaintiff was his accomplice in the robberies, and he so testified on the plaintiff's trial, as a state's witness. In his own behalf, the plaintiff testified that the various stops he made were at the request of Howard, who said he was collecting money from friends. The plaintiff's excuse for attempting to escape was that Howard told him, as the pursuit started, that he had committed the robberies, and the plaintiff, realizing what it would mean to him if he were "caught a third time" and how hard it would be to explain his position, attempted to escape. As to the revolver, he claimed Howard must have taken this from a bureau drawer without his knowledge.

Both the plaintiff and Howard were convicted and committed to the state prison. While there, Howard told several persons that he had testified falsely as to

the plaintiff's connection with the robberies and that they were committed without the plaintiff's knowledge. He refused to make a written statement to this effect and after his release from prison he appeared in the state's attorney's office and said that he had told the truth on trial and would so testify again if he were called as a witness.

The claim of the plaintiff, in substance, is that the testimony of Howard in the original trial was the result of pressure put upon him by the police and that his later denial of its truth and affirmation of the plaintiff's innocence constitute new evidence that entitles the plaintiff to a new trial. The defendant contends that the statements are no more than conflicting statements in addition and similar to those which were called to the attention of the jury at the plaintiff's trial, and further are of no consequence because of the final statement of Howard that he told the truth at that time and would testify to the same effect if called on the stand again.

The plaintiff refers to Howard's statements to the witnesses he produced in the present proceeding as a "recantation." To recant is to withdraw or repudiate formally and publicly. Webster's New International Dictionary (2d Ed.). Howard was not produced in court for examination by the trial judge. He made no affidavit exonerating the plaintiff. The court had before it evidence that if called to testify in a new trial he would testify as he had in the first. A comparison of this situation with that in *People* v. *Shilitano*, 218 N. Y. 161, 112 N. E. 733, relied upon by the plaintiff as authority, shows the weakness of the plaintiff's position. There, principal witnesses for the prosecution at the hearing on a motion for a new trial repudiated, under oath, the testimony they had given on the trial. In *Powell* v. *Commonwealth*, 133 Va. 741, 755, 112

S. E. 657, it was said that "The courts properly require that it shall be made to appear affirmatively that the new evidence tending to show . . . perjury, beyond question exists and is not a mere matter of belief or opinion, before they will grant the relief in such cases." In *State* v. *Goldberger,* 118 Conn. 444, 173 Atl. 216, we reviewed the authorities and said (p. 457): "Upon a petition for a new trial, the burden of proving that the newly-discovered evidence, if offered, would probably bring about a different result is upon the plaintiff, and in determining that issue upon a hearing of such a petition, the trial court exercises a discretion which cannot be reviewed unless it appears that its discretionary power has been abused." The rationale of the rule was well stated by Judge Cardozo in an independent concurring opinion in *People* v. *Shilitano,* supra, 180, where he said: "I think it was the duty of the trial judge to try the facts, and determine as best he could where the likelihood of truth lay. . . . He was not at liberty to shift upon the shoulders of another jury his own responsibility."

We said in *Levine* v. *Union & New Haven Trust Co.,* 127 Conn. 435, 440, 17 Atl. (2d) 500, that "upon such an application the court compares the old testimony with the new and decides, in the exercise of a sound discretion, whether injustice has probably been done, and whether the newly discovered evidence is likely to change the result." In the case before us the question presented to the court was not that of the falsity of Howard's entire testimony. Much of it was corroborated by the plaintiff himself. The plaintiff admitted that the revolver used by Howard belonged to him; that he drove Howard in his car to the various places where the crimes occurred; that he waited in the car while Howard committed them; and that, when the police officer pursued them, he tried to

escape. The issue was reduced to the narrow question whether or not he knew that Howard, when he left the car, intended to commit the robberies. The jury, at the original trial, had before it the fact that Howard had made conflicting statements as to the plaintiff's part in the affair. If a new trial were granted, further conflicting statements made by him would be placed in evidence. It would be the duty of the jury, as it was that of the jury at the original trial, to winnow out the truth as best they could, testing Howard's various stories by such other facts as they found proven and by their own knowledge of human nature. The trial court might well conclude that the situation confronting a new jury would not materially differ from that upon which the jury at the first trial was called upon to act.

In *Larrison* v. *United States*, 24 Fed. (2d) 82, 87, the conditions under which a new trial should or may be granted are stated as being "(a) The court is reasonably well satisfied that the testimony given by a material witness is false. (b) That without it the jury *might* have reached a different conclusion. (c) That the party seeking the new trial was taken by surprise when the false testimony was given and was unable to meet it or did not know of its falsity until after the trial." Tested by these requirements it is clear that the trial court did not abuse its discretion in denying the petition.

We need not consider the claim of the state that, to justify the granting of a new trial on the ground that a witness committed perjury, it is first necessary that he be convicted of that crime. The deposition which the trial court excluded merely contained testimony by another witness as to statements made by Howard, while in prison, in contradiction of his evidence at the trial, and, in the view we take of the case, its admis-

sion could not have materially affected the trial court's decision. The ruling was at most harmless error.

There is no error.

In this opinion the other judges concurred.