## CLAUDIOUS W. CHANNER v. STATE OF CONNECTICUT
## (AC 17857)

Lavery, Hennessy and Kulawiz, Js.[1]

[1] This appeal was argued before a panel comprised of Judges Lavery, Hennessy and Kulawiz. Although Judge Kulawiz agreed with the other two judges regarding the resolution of this appeal, she died before she had the opportunity to concur with the written decision. The parties stipulated, however, that they would not reargue the appeal to this court with a panel consisting of the original two judges and an additional judge. Rather, the parties stipulated that they would permit the remaining two judges alone to render this written decision.

Argued December 15, 1998—officially released August 24, 1999

*Claudious W. Channer*, pro se, the appellant (petitioner).

*Michele C. Lukban*, assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *George Ferko*, assistant state's attorney, for the appellee (respondent).

*Opinion*

LAVERY, J. The petitioner, Claudious W. Channer, appeals from the judgment of the trial court denying his petition for a new trial. On appeal, the petitioner claims that the trial court improperly (1) found that the witnesses' recantations were not credible and that the petitioner failed to meet his burden of proving the validity of the claimed misidentification of him, and (2) applied the wrong standard in reviewing his claim. We affirm the judgment of the trial court.

The following facts are pertinent to this appeal. On June 12, 1988, Delroy Lewis and his fiancee, Dawn

Jones, were riding in Lewis' car in Hartford. At a traffic light, a car with two men in it pulled up to the passenger side of Lewis' car, and Jones saw a gun pointed at her from the vehicle. The car swerved several times in front of and near Lewis' car. At another traffic light, the driver of the second car exited his vehicle and told Lewis he was going to shoot him.

Lewis drove away, but the car followed and again swerved into his path. Lewis stopped his car and Jones got out. The other driver again got out of the car with a gun and threatened to kill Lewis. After again attempting to drive away from the two men, Lewis eventually got out of his car and was punched in the face by the other driver. The petitioner got out of the other car with a gun and Lewis fled. The petitioner then drove Lewis' car from the scene.

After a jury trial, the petitioner was convicted of one count of robbery in the first degree in violation of General Statutes § 53a-134 (a) (4), and one count of conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-48 (a) and 53a-134 (a) (4). At the criminal trial, the state offered testimony by Jones and Lewis identifying the petitioner as the perpetrator. Jones testified that on the day of the robbery she and Lewis went to the police station and were shown approximately ten photographs from which she selected the petitioner as the passenger of the other car involved in the incident. During the criminal trial, Jones made an in-court identification of the petitioner.[2] During cross-examination, Jones reiterated that she had identified the petitioner as the passenger in the car.

---

[2] At trial, Jones testified that the petitioner looked different from the man involved in the incident. Upon further direct examination, Jones reviewed the photographs from the original photographic array and again picked out the photograph of the petitioner. She again testified that the picture depicted the passenger in the car involved in the robbery, adding that the petitioner now looked different.

At trial, Lewis testified that he was within six feet of the passenger of the vehicle at the time of the incident. He testified that he was shown a photographic array at the police station on the day of the incident and that he had selected the petitioner as the passenger who drove away with his vehicle. Lewis also made an in-court identification of the petitioner at trial.

During cross-examination, Lewis denied that he had ever been approached by anyone after the incident who suggested that the petitioner was involved in the crime. After being questioned about his brother, Lewis denied that he had a brother named "Trey" or "Tred." Lewis also denied having been shown any photographs of individuals allegedly involved in the incident other than those shown to him by police.

On February 21, 1991, the petitioner was sentenced to twenty years imprisonment to be served consecutive to a federal sentence the petitioner already was serving. This court affirmed the judgment of conviction. *State v. Channer*, 28 Conn. App. 161, 612 A.2d 95, cert. denied, 223 Conn. 921, 614 A.2d 826 (1992). On October 21, 1991, the petitioner filed a petition for a new trial.[3] The trial court conducted a hearing on the petition on February 27 and April 9, 1997. The petitioner acted pro se at the hearing. In a written memorandum of decision, dated September 12, 1997, the trial court made extensive factual findings and denied the petition. We affirm the judgment of the trial court.

I

We first address the petitioner's claim that the trial court abused its discretion in concluding that the witnesses' recantations were not credible and that the petitioner failed to meet his burden of proving the validity of the claimed misidentification.

[3] The petition for a new trial was filed on October 21, 1991, in the judicial district of Hartford-New Britain at Hartford. The petitioner's appeal from his conviction was denied in 1992, and the trial court, *Bishop, J.*, denied

At the hearing on the petition for a new trial, Jones testified that she no longer believed that the petitioner was one of the perpetrators. She declined to give her address when sworn in as a witness, and stated that she still had fears about the incident and was still afraid of the petitioner. Jones testified that some time after the criminal trial, she received a letter from the petitioner at her mother's home address. Jones responded by sending him a letter that she wrote after the trial, but prior to his sentencing. In the letter, Jones said that she felt bad for the petitioner and no longer thought he was one of the perpetrators. Subsequently, Jones signed an affidavit stating that she did not believe that the petitioner was one of the people involved in the robbery. Jones testified at the hearing that prior to the criminal trial she was shown some photographs, and she recalled that one of them depicted two people she believed were the perpetrators.[4] Jones further noted that one of the men in the photograph looked like the petitioner.

At the hearing, Lewis testified, contrary to his earlier testimony, that prior to the criminal trial he had been shown a photograph of two men that he recognized to be the men who stole his car. He testified that these photographs were shown to him by his brother, Denzel Stewart, who is also known as "Trey." Lewis explained at the hearing that he conveyed that information to someone at the petitioner's criminal trial before he testified, and he further asserted that he told that person that he wanted to drop the case against the petitioner. Although Lewis testified that he did not recall who that person was, it was his recollection that the person was

the petitioner's petition for a writ of habeas corpus on February 8, 1996. On August 2, 1996, the action on the petition for a new trial was transferred to the judicial district of Tolland, and the hearing on the petition was held in February, 1997.

[4] Jones testified that she thought these photographs were shown to her on the petitioner's behalf. Although Jones did not remember who had shown her the pictures, she thought it was Lewis' brother, Tred.

in a responsible position in regard to the criminal prosecution. Further, Lewis testified that in 1994 he signed a statement in which he stated that he had misidentified the petitioner at trial and that he was willing to testify to that extent.[5]

Lewis testified that he lied at the criminal trial when he stated that he did not have a brother named Trey. He also claimed that he told police prior to his testimony that the petitioner was not one of the perpetrators. Lewis claimed that police threatened him by saying that if he did not testify that the petitioner was the perpetrator, they would instead charge him with the crime.

James Looby, an inspector assigned to the state's attorney's office during the investigation, testified that he met separately with Jones and Lewis prior to the criminal trial, and that both said they had been contacted by an individual who wanted to know if they were interested in "settling" the case for money. After the criminal trial, Looby again met with Jones. Looby testified that Jones told him about the letter she received from the petitioner and said that she was fearful that the petitioner or one of his friends might do something to her or a member of her family. Looby also testified that Jones was angry that the petitioner had obtained her mother's address. Further, Jones told Looby that the petitioner had sent her a picture, along with his letter, of a person Jones thought looked like the person who robbed her and Lewis. Looby also testified that Jones said she was relieved after the trial because she felt that everything was over, and that when the petitioner's letter came to her mother's house she became very scared about her safety and that of her mother.

---

[5] This written statement was made an exhibit at the petitioner's hearing for a new trial. Lewis testified that he did not know who prepared it, but that it was given to him by his brother.

James Howard, a detective with the Hartford police department at the time of the robbery, testified that he was present when Lewis and Jones selected the petitioner's photograph from approximately ten photographs. Howard testified that Jones and Lewis were separated during their interviews, their viewing of the photographs and their ultimate selection of the petitioner as one of the perpetrators. Further, Howard testified that neither Jones nor Lewis ever contacted him to say that they had made mistaken identifications and he was not aware of any effort made to contact the police department with such information.

The trial court denied the petition and made specific findings as to the petitioner's claimed newly discovered evidence. The court concluded that the recantation testimony of both Jones and Lewis was not credible and that the petitioner had failed to prove that the material testimony they gave at the criminal trial was false.

"Connecticut has long recognized petitions for new trials based on newly discovered evidence. . . . The modern standard, or an equivalent formulation, adopted by a majority of state and federal courts for granting such a petition is based on the landmark case of *Berry* v. *State*, 10 Ga. 511 (1851). Connecticut adopted this general standard as early as 1880 in *Hamlin* v. *State*, 48 Conn. 92, 93 (1880), and has since applied it in a long line of cases. . . . Under this standard, a new trial is granted if the petitioner can demonstrate, by a preponderance of the evidence, that the proffered evidence (1) is newly discovered, such that it could not have been discovered earlier by the exercise of due diligence, (2) would be material on a new trial, (3) is not merely cumulative, and (4) is likely to produce a different result in a new trial. . . . In analyzing the foregoing factors, trial courts are guided by the general principle that a new trial should be granted because of newly discovered evidence only if an injustice was done

or it is probable that on a new trial a different result would be reached. . . . The scope of review of a trial court's decision to grant a new trial on the basis of newly discovered evidence is limited to whether the trial court abused its discretion . . . . Connecticut cases have employed this standard, which we will refer to as the *Asherman* standard, in several different contexts involving newly discovered evidence." (Citations omitted.) *Johnson* v. *State*, 36 Conn. App. 59, 63–64, 647 A.2d 373, cert. denied, 231 Conn. 946, 653 A.2d 827 (1994); see *Asherman* v. *State*, 202 Conn. 429, 521 A.2d 578 (1987).

The *Johnson* court further stated that "[a] standard specifically addressing the issue of false testimony was enunciated in *Larrison* v. *United States*, 24 F.2d 82 (7th Cir. 1928). False testimony may be of two types: (1) where a material witness admits to perjuring himself at trial or . . . (2) where a material witness has recanted his testimony and claims he was mistaken as to what he said at trial. See generally 3 C. Wright, Federal Practice and Procedure (1982) § 557.1. In analyzing a petitioner's claim under these circumstances, a new trial should be granted when (1) the court is reasonably well satisfied that the testimony of a material witness is false, (2) without it the jury might have reached a different conclusion, and (3) the party seeking a new trial was taken by surprise when the false testimony was given. *Larrison* v. *United States*, supra, 87. Connecticut adopted this standard as applicable to recantations in *Pradlik* v. *State*, [131 Conn. 682, 687, 41 A.2d 906 (1945);] see also *Smith* v. *State*, 141 Conn. 202, 104 A.2d 761 (1954); *Smith* v. *State*, 139 Conn. 249, 251, 93 A.2d 296 (1952); *State* v. *Davis*, 2 Conn. Cir. Ct. 257, 262, 197 A.2d 668 (1963). Appellate review of a trial court's decision in this regard is likewise conducted under an abuse of discretion standard. *Pradlik* v. *State*, supra, 687." *Johnson* v. *State*, supra, 36 Conn. App. 64–65.

We first address the petitioner's claim that the trial court improperly dismissed his petition in light of Lewis' admission that he perjured himself at the criminal trial. In its memorandum of decision, the court found that Lewis had testified falsely about being shown photographs of the supposed perpetrators before the criminal trial and about the identity of his brother, Stewart, also known as Trey or Tred. Although the court found that the first prong of the *Pradlik* test was satisfied by this false testimony, it further concluded that the petitioner's claim failed to meet the test's second prong. The court concluded that the perjured testimony was not material to the issue of the petitioner's culpability. The court found that the petitioner failed to demonstrate that the identification of him at trial would have been eroded by proof that Lewis had seen other photographs before the trial. Further, the court found that the petitioner failed to prove that Lewis' initial identification of him at the police station was inaccurate or unreliable.

Although the trial court found unclear what Lewis' motivations were for his failure to acknowledge his brother, his denial of having ever viewed photographs prior to the criminal trial and his change in testimony at the hearing, the court concluded that the falsities in Lewis' testimony did not directly implicate the accuracy of his identification of the petitioner. Thus, in applying the second prong of the *Pradlik* test, the court concluded that although Lewis had perjured himself, the realization of his false testimony did not lead the court to believe that the underlying trial resulted in an injustice or that the availability of the information would have led to a different result.

"In reviewing claims that the trial court abused its discretion, great weight is given to the trial court's decision and every reasonable presumption is given in favor of its correctness. . . . We will reverse the trial court's ruling only if it could not reasonably conclude as it

did." (Internal quotation marks omitted.) *State* v. *Hoth*, 50 Conn. App. 77, 87–88, 718 A.2d 28, cert. denied, 247 Conn. 922, 722 A.2d 811 (1998). In this case, we conclude that the trial court's decision is fully supported by the facts and, therefore, it could reasonably have concluded that the petitioner failed to meet his burden of proving that the absence of the perjured testimony would have led to a different trial result.

The petitioner also argues that the trial court abused its discretion in not granting him a new trial on the basis of the recantation testimony of both Jones and Lewis. Under the first prong of the *Pradlik* standard, the court must be convinced of the truthfulness of the witnesses' recantations, and the court must examine all the circumstances surrounding the recantation to discern whether it is credible. *Johnson* v. *State*, supra, 36 Conn. App. 65–66. The trial court, in this case, was unpersuaded that the criminal trial testimony of either Jones or Lewis was false with respect to their initial identification of the petitioner from a photographic array or their subsequent identification of him at the criminal trial. Further, the trial court found that the petitioner had failed to prove any error in the criminal trial testimony of either Jones or Lewis identifying the petitioner as the person whose photograph they selected at the police station.

"Recantation as grounds for a new trial has always been viewed with skepticism. Well over one hundred years ago, our Supreme Court enunciated this skepticism in *Shields* v. *State*, 45 Conn. 266, 270 (1877) as follows: 'After the trial is over and the accused stands convicted, with the heavy penalty of the law impending and just ready to fall upon him, how easy by artful or even honest suggestion to awaken a sympathy even in the heart of the victim, who was the main, perhaps only witness against the accused, and who naturally feels responsible for the conviction; and how easy for such

witness by a process of speculation, colored by feeling, to feel and express a doubt about the correctness of the opinion entertained at the time of the transaction.' " *Johnson* v. *State,* supra, 36 Conn. App. 69.

In this case, the trial court reasonably found that the testimony of Jones and Lewis at the hearing on the petition for a new trial lacked credibility. The court concluded that it was unbelievable that their individual selections of the petitioner's photograph from a photographic array and their subsequent identification of the petitioner at his criminal trial were mistaken. The court found that Jones was still afraid of the petitioner. Further, the trial court concluded that the exculpatory statements and testimony given by Jones following the criminal trial were the product of intimidation and fear. The court found her testimony was not credible. The court also found that Lewis was not credible and that his recantation was not believable.

It is for the trial court as the fact finder to determine the credibility of the recantations. " '[I]t is the court's right to consider evidence, draw logical deductions and make reasonable inferences from the facts proven.' " *Talton* v. *Warden,* 33 Conn. App. 171, 179, 634 A.2d 912 (1993), aff'd, 231 Conn. 274, 648 A.2d 876 (1994). "We cannot retry the matter, nor can we pass on the credibility of a witness." Id. The trial court was in the best position to observe and determine the credibility of the witnesses, and to discern the motivations for their recantations. The facts set forth in the court's memorandum of decision are supported by the evidence. We, therefore, conclude that the trial court did not unreasonably find that the recantation testimony was not credible and that the petitioner failed to meet the first prong of the *Pradlik* test.

## II

The petitioner next claims that the trial court applied the wrong standard of review. Specifically, the petitioner focuses on the trial court's finding as to Lewis' perjured testimony. The petitioner cannot prevail on this claim.

In its memorandum of decision, the trial court concluded that "Lewis is a perjurer. The realization of that information, however, does not lead the court to believe that the underlying trial resulted in an injustice, or that the availability of this information *would* have led to a different result." (Emphasis added.) The petitioner argues that the trial court applied the wrong standard in its analysis of this newly discovered evidence. The petitioner's argument focuses on the trial court's use of the word "would" and claims that the court used a more stringent standard than that required by *Pradlik*. We disagree and conclude that the trial court applied the proper standard.

In *Lombardo* v. *State*, 172 Conn. 385, 374 A.2d 1065 (1977), our Supreme court held that "[w]hether a new trial should be granted does not turn on whether the evidence is such that the jury *could* extend credibility to it. . . . The plaintiff must persuade the court that the new evidence he submits will *probably*, not merely possibly, result in a different verdict at a new trial, or that an injustice has been done. *Pradlik* v. *State*, [supra, 131 Conn. 686]. It is not sufficient for him to bring in new evidence from which a jury could find him not guilty—it must be evidence which persuades the judge that a jury *would* find him not guilty." (Citation omitted; emphasis in original.) *Lombardo* v. *State*, supra, 390–91; see *Gray* v. *State*, 51 Conn. App. 689, 693, 725 A.2d 364 (1999). We, therefore, conclude that the trial court did not apply an improper standard in this case in its analysis of Lewis' false testimony. The trial court's conclusion that the newly discovered evidence did not lead

the court to believe that the underlying trial resulted in an injustice, or that the availability of this information would have led to a different result does not indicate to this court that an improper standard was used. We conclude that the trial court applied the proper standard in this case.

The judgment is affirmed.

In this opinion HENNESSY, J., concurred.