**Claudious W. CHANNER,**
**Petitioner–Appellant,**

v.

**Warden Leslie E. BROOKS,**
**Respondent–Appellee.**

**Docket No. 01–2093.**

United States Court of Appeals,
Second Circuit.

Argued: Oct. 21, 2002.

Decided: Feb. 13, 2003.

Errata Filed: Feb. 14, 2003.

David N. Rosen, Rosen & Dolan, P.C., New Haven, CT, for Petitioner–Appellant.

Carolyn K. Longstreth, Senior Assistant State's Attorney (Richard F. Jacobson, Special Assistant State's Attorney, on the brief), Office of the Chief State's Attorney, Rocky Hill, CT, for Respondent–Appellee.

Before: WINTER, McLAUGHLIN, and CABRANES, Circuit Judges.

PER CURIAM.

Claudious Channer appeals from the denial by the United States District Court for the District of Connecticut (Alvin W. Thompson, *Judge*) of his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In that petition, Channer asserted that the Connecticut Superior Court made unreasonable determinations of fact and left certain key facts undeveloped during a post-conviction hearing at which the Court declined to order a new trial after both of the state's eyewitnesses recanted their trial testimony. Channer presently seeks either a new trial or a remand to the District Court for an evidentiary hearing.

## I. Factual and Procedural Background

The Connecticut Appellate Court, in an earlier proceeding, provided an account of the facts relevant to the instant petition, which sets the stage for this federal habeas claim:

On June 12, 1988, Delroy Lewis and his fiancee, Dawn Jones, were riding in Lewis' car in Hartford. At a traffic light, a car with two men in it pulled up to the passenger side of Lewis' car, and Jones saw a gun pointed at her from the vehicle. The car swerved several times in front of and near Lewis' car. At another traffic light, the driver of the second car exited his vehicle and told Lewis he was going to shoot him.

Lewis drove away, but the car followed and again swerved into his path. Lewis stopped his car and Jones got out. The other driver again got out of the car with a gun and threatened to kill Lewis. After again attempting to drive away from the two men, Lewis eventually got out of his car and was punched in the face by the other driver. The petitioner [Channer] got out of the other car with a gun and Lewis fled. The petitioner then drove Lewis' car from the scene.

After a jury trial, the petitioner was convicted of one count of robbery in the first degree in violation of General Statutes § 53a134(a)(4), and one count of conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a–48(a) and 53a–134(a)(4). At the criminal trial, the state offered testimony by Jones and Lewis identifying the petitioner as the perpetrator. Jones testified that on the day of the robbery she and Lewis went to the police station and were shown approximately ten photographs from which she selected the petitioner as the passenger of the other

car involved in the incident. During the criminal trial, Jones made an in-court identification of the petitioner. During cross-examination, Jones reiterated that she had identified the petitioner as the passenger in the car.

At trial, Lewis testified that he was within six feet of the passenger of the vehicle at the time of the incident. He testified that he was shown a photographic array at the police station on the day of the incident, and that he selected the petitioner as the passenger who drove away with his vehicle. Lewis also made an in-court identification of the petitioner at trial.

During cross-examination, Lewis denied that he had ever been approached by anyone after the incident who suggested that the petitioner was involved in the crime. After being questioned about his brother, Lewis denied that he had a brother named "Trey" or "Tred." Lewis also denied having been shown any photographs of individuals allegedly involved in the incident other than those shown to him by police.

On February 21, 1991, the petitioner was sentenced to twenty years['] imprisonment to be served consecutive to a federal sentence the petitioner already was serving. [The Connecticut Appellate Court] affirmed the judgment of conviction. *State v. Channer*, 28 Conn. App. 161, 612 A.2d 95, *cert. denied*, 223 Conn. 921, 614 A.2d 826 (1992). On October 21, 1991, the petitioner filed a petition for a new trial. The trial court conducted a hearing on the petition on February 27 and April 9, 1997. The petitioner acted pro se at the hearing. . . .

. . .

At the hearing on the petition for a new trial, Jones testified that she no longer believed that the petitioner was one of the perpetrators. She declined to give her address when sworn in as a witness, and stated that she still had fears about the incident and was still afraid of the petitioner. Jones testified that some time after the criminal trial, she received a letter from the petitioner at her mother's home address. Jones responded by sending him a letter that she wrote after the trial, but prior to his sentencing. In the letter, Jones said that she felt bad for the petitioner and no longer thought he was one of the perpetrators. Subsequently, Jones signed an affidavit stating that she did not believe that the petitioner was one of the people involved in the robbery. Jones testified at the hearing that prior to the criminal trial she was shown some photographs, and she recalled that one of them depicted two people she believed were the perpetrators. Jones further noted that one of the men in the photograph looked like the petitioner.

At the hearing, Lewis testified, contrary to his earlier testimony, that prior to the criminal trial he had been shown a photograph of two men that he recognized to be the men who stole his car. He testified that these photographs were shown to him by his brother, Denzel Stewart, who is also known a[s] "Trey." Lewis explained at the hearing that he conveyed that information to someone at the petitioner's criminal trial before he testified, and he further asserted that he told that person that he wanted to drop the case against the petitioner. Although Lewis testified that he did not recall who that person was, it was his recollection that the person was in a responsible position in regard to the criminal prosecution. Further, Lewis testified that in 1994 he signed a statement in which he stated that he had misidentified the petitioner at trial and that he was willing to testify to that extent.

Lewis testified that he lied at the criminal trial when he stated that he did not have a brother named Trey. He also claimed that he told police prior to his testimony that the petitioner was not one of the perpetrators. Lewis claimed that police threatened him by saying that if he did not testify that the petitioner was the perpetrator, they would instead charge him with the crime.

James Looby, an inspector assigned to the state's attorney's office during the investigation, testified that he met separately with Jones and Lewis prior to the criminal trial, and that both said they had been contacted by an individual who wanted to know if they were interested in "settling" the case for money. After the criminal trial, Looby again met with Jones. Looby testified that Jones told him about the letter she received from the petitioner and said that she was fearful that the petitioner or one of his friends might do something to her or a member of her family. Looby also testified that Jones was angry that the petitioner had obtained her mother's address. Further, Jones told Looby that the petitioner had sent her a picture, along with his letter, of a person Jones thought looked like the person who robbed her and Lewis. Looby also testified that Jones said she was relieved after the trial because she felt that everything was over, and that when the petitioner's letter came to her mother's house she became very scared about her safety and that of her mother.

James Howard, a detective with the Hartford police department at the time of the robbery, testified that he was present when Lewis and Jones selected the petitioner's photograph from approximately ten photographs. Howard testified that Jones and Lewis were separated during their interviews, their viewing of the photographs and their ultimate selection of the petitioner as one of the perpetrators. Further, Howard testified that neither Jones nor Lewis ever contacted him to say that they had made mistaken identifications and he was not aware of any effort made to contact the police department with such information. *Channer v. State,* 54 Conn.App. 620, 621–26, 738 A.2d 202, 203–05 (1999) (footnotes omitted).

In a Memorandum of Decision dated September 12, 1997, the Connecticut Superior Court denied Channer's motion for a new trial. The Court concluded, first, that Channer had failed to prove that the testimony they gave at the original criminal trial was false, and second, that recantations by Jones and Lewis of their trial testimony at the post-conviction hearing were not credible. *See Channer v. State,* No. CV 91–0503029S, 1997 WL 584709, at *8–*9 (Conn.Super. Ct. Jud. Dist. of Hartford Sept. 12, 1997).[1] The Court found that Jones was clearly afraid of Channer and that "[h]er fear-laden recantation testimony [did] not diminish the credibility of her criminal trial testimony." *Id.* at *8. With respect to Lewis's recantation, the Court found that it was uncorroborated and "entitled to little credit." *Id*

Based on the corroborating testimony of Denzel Stewart, however, the Court found that "Lewis testified falsely at the criminal trial about being shown any pictures by individuals other than the police prior to the trial," and that "prior to the criminal trial it is likely that Lewis was shown at least one photograph by his brother Trey, and that Trey had received this photo-

1. The proceeding actually took place in the Judicial District of Tolland, but the case retained its Hartford Judicial District docket number and was transferred back to Hartford upon the Court's filing of its memorandum of decision. *Id.* at *1.

graph from Channer." *Id.* The Court also found that Lewis had committed perjury when he failed to acknowledge the existence of his brother Trey at the trial. *Id.* Nevertheless, the Court stated:

> The realization of this information ... does not lead the court to believe that the underlying trial resulted in an injustice, or that the availability of this information would have led to a different result. Channer has not demonstrated that Lewis' direct and identifying evidence would have been eroded by proof that he had seen other photographs before the trial, including one of an individual resembling Channer.

*Id.*

On appeal, the Connecticut Appellate Court affirmed the Superior Court's ruling. *Channer,* 54 Conn.App. at 621, 738 A.2d at 203. The Court held: (1) that the Superior Court reasonably determined that the testimony of Jones and Lewis at the 1997 hearing was not credible; and (2) that the Superior Court applied the proper legal standard under Connecticut law when it concluded that defendant had to prove that the availability of the newly discovered evidence *would* have led to a different result rather than merely that it *could* have led to a different result. *Channer,* 54 Conn.App. at 628–32, 738 A.2d at 206–208. The Connecticut Supreme Court denied certification. *Channer,* 251 Conn. 910, 739 A.2d 1247 (1999).

### II. Proceedings in the District Court

■ On August 27, 1999, Channer petitioned for a federal writ of habeas corpus in the District Court.[2] The Court denied the petition in an opinion filed on January 25, 2001, *Channer v. Brooks,* No. 3:99 CV 1707(AWT)(DFM), 2001 WL 34056850 (D.Conn. Jan. 25, 2001), and affirmed that denial on reconsideration, *Channer v. Brooks,* No. 3:99 CV 1707(AWT)(DFM) (D.Conn. July 19, 2001).

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat 1214, "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted," unless the adjudication of the claim in state court:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). In his federal habeas petition, Channer asserted the following grounds for habeas relief: (1) witness Delroy Lewis offered false testimony at trial; (2) witness Dawn Jones offered false testimony at trial; (3) witness Delroy Lewis recanted his trial testimony; and (4) witness Dawn Jones recanted her trial testimony. Construing Channer's federal claim to be a general claim that "the denial of his motion for a new trial has resulted in his continued incarceration in violation of his right to due process and fundamental fairness under the Sixth and Fourteenth Amendements," *Channer,* 2001 WL 34056850, at *4, the District Court focused on the second prong of § 2254(d)—whether the Connecticut Superior Court had made an unreasonable determination of the facts at Channer's post-conviction

---

**2.** On December 29, 2000, Channer brought another federal petition for a writ of habeas corpus challenging his state-court conviction on other grounds. That petition was denied for failure to exhaust his state court remedies on January 23, 2001. *Channer v. Brooks,* No. 3:99 CV 2564(CFD), 2001 WL 91601 (D.Conn. Jan. 23, 2001), *aff'd on reconsideration,* 2001 WL 1094964 (D.Conn. Sept.10, 2001). Because the claims in that petition were not adjudicated on the merits and were dismissed only for failure to exhaust, the instant petition cannot be considered a "second petition" for the purposes of 28 U.S.C. § 2244 or Rule 9(b) of the Rules Governing Section 2254 Cases in the United States District Courts. *See Slack v. McDaniel,* 529 U.S. 473, 485–89, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000); *James v. Walsh,* 308 F.3d 162, 167–68 (2d Cir.2002).

hearing. The District Court also examined, under § 2254(e)(1), whether Channer had rebutted with "clear and convincing evidence" the presumption that the Superior Court's findings of fact were correct. 28 U.S.C. § 2254(e)(1).[3] The District Court noted that it remains an open question in our Circuit whether a petitioner must prevail on both the § 2254(d)(2) and the § 2254(e)(1) inquiries in order to obtain relief, *see, e.g., Jackson v. Anderson,* 112 F.3d 823, 824–25 (5th Cir.1997), or whether satisfaction of either inquiry independently is sufficient to obtain relief, *see Leka v. Portuondo,* 76 F.Supp.2d 258, 276–77 (E.D.N.Y.1999) (citing academic commentary advocating the latter interpretation), *rev'd on other grounds,* 257 F.3d 89 (2d Cir.2001). *See Channer,* 2001 WL 34056850, at *5. The District Court proceeded, as we do in evaluating this petition, under the assumption that satisfaction of either inquiry would be sufficient. *Id.*

With respect to Dawn Jones's testimony, the District Court held that the Superior Court's determination that her recantation was not credible was neither unreasonable in light of the evidence presented nor contradicted by "clear and convincing evidence." *Channer,* 2001 WL 34056850, at *5–7. Because no question of substance was presented for judicial review regarding Channer's claims with respect to Jones, the Court denied a certificate of appealability with respect to those claims, *id.* at *9, and we have no occasion to consider them here.

With respect to Delroy Lewis, the District Court held that the state court's determination that his recantation was not credible was neither unreasonable in light of the evidence presented nor contradicted

by "clear and convincing evidence." *Id.* at *7–9. The District Court also held that the state court did not unreasonably interpret the facts when it determined that Lewis's perjury as to other matters did not likely alter the outcome of the jury trial. *Id.* at *8–9. Finding that the claims involving Lewis presented "a closer question" than those involving Jones, however, the District Court issued a certificate of appealability with respect to those claims. *Id.* at *9.

For substantially the reasons stated by the District Court, *see id.* at *7–9, we agree that the Superior Court's determination that Lewis's post-conviction testimony was not credible was neither unreasonable nor rebutted by clear and convincing evidence. We must engage in further analysis, however, to determine whether the Superior Court unreasonably interpreted the facts when it found that Lewis's perjury as to other matters did not likely alter the outcome of the original jury trial. It is to this question that we now turn.

### III. Discussion

■ We review the District Court's denial of a petition for a writ of habeas corpus *de novo,* but "we also must defer to state court findings of fact, mixed findings of fact and law, and conclusions of law." *Boyette v. Lefevre,* 246 F.3d 76, 88 (2d Cir.2001); *see* 28 U.S.C. § 2254(d), (e). We address each of Channer's arguments in turn.

### A.

■ Channer first argues that, because "the state court completely ignored

---

**3.** The text of 28 U.S.C. § 2254(e)(1) states as follows:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue

made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

the impact of ... Lewis's perjury on Channer's *defense*" and "completely omitted any consideration of the impact that the revelation of Lewis's perjury could be expected to have on the jury," this court should order a new trial or an evidentiary hearing to reconsider the impact of Lewis's perjury on the jury's verdict. Pet'r's Br. at 15–16 (emphasis in original). It is true that where a state court does not resolve a question of fact, no presumption of correctness can possibly attach with respect to that issue. *See, e.g., Ford v. Wainwright,* 477 U.S. 399, 410, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986); *Galarza v. Keane,* 252 F.3d 630, 640 (2d Cir.2001).

■ In the circumstances presented here, however, we believe that the Superior Court implicitly made adverse findings with respect to the impact of Lewis's perjury on all aspects of Channer's trial and, therefore, we conclude that its determination that the trial outcome was fair is entitled to deference under 28 U.S.C. § 2254(d)(2) and (e)(1). The Superior Court stated that it "[did] not find [the discrepancy in Lewis's testimony] material to the issue of Channer's culpability, *or to the fairness of the underlying criminal trial* ... since there was no credible evidence that either Lewis' or Jones's initial identification of Channer as one of the perpetrators was tainted." *Channer,* 1997 WL 584709, at *8 (emphasis added). The Superior Court concluded that the trial was fair in view of the strength of Lewis's and Jones's original eyewitness identifications of Channer as the culprit, which it

believed sufficient to carry the burden of proof, regardless of whatever new doubts may have been raised by Lewis's perjury. *Id.* Although the Superior Court could have been more detailed in explaining its factual findings, we do not believe that the factual issues now raised by Channer are ones that were not previously presented to the Superior Court in post-conviction proceedings or considered by that court. The Court's broad factual determination that the trial was fair embraced the more detailed factual findings regarding witness credibility and jury impact that served as a predicate for that determination. Indeed, in an analogous context, we have held that a state court's adjudication of questions of federal law are considered to have been adjudicated "on the merits" and are entitled to deference on collateral review, even where the state court states only its ultimate conclusion and does not explain its reasoning process. *See Sellan v. Kuhlman,* 261 F.3d 303, 311–312 (2d Cir.2001).

■ Because we conclude that the state court effectively made findings with respect to the issues Channer raises, those findings are entitled to deference under AEDPA. We therefore review the state court's findings only to determine whether they were unreasonable in light of the evidence presented, 28 U.S.C. § 2254(d)(2), or whether the presumption that they are correct was rebutted by "clear and convincing" evidence, 28 U.S.C. § 2254(e)(1). We agree with the District Court that the Superior Court's findings were both reasonable and entitled to a presumption of

correctness. There is ample support for the Superior Court's conclusion that exposure of Lewis's perjury would not have altered the result of Channer's jury trial. Although Lewis's credibility would have been impeached, and Channer's testimony strengthened, by the revelation of perjury, the District Court properly noted that both Lewis and Jones had made eyewitness identifications of Channer at trial. *Channer,* 2001 WL 34056850, at *6, 8. Both Lewis and Jones testified at trial that they had previously identified Channer after having been shown a series of ten or so photographs of possible suspects at the police station. One of the law enforcement officials who testified at the post-conviction hearing on the motion for a new trial indicated to the police that Lewis and Jones separately identified Channer, and that neither had indicated that someone else might have been the perpetrator. In light of the evidence presented both at Channer's trial and at his post-conviction hearing, the Superior Court reasonably determined that the impact of Lewis's perjury was insufficiently strong to have produced a different outcome at trial. Nor has any of the evidence that Channer presented in the District Court rebutted "by clear and convincing evidence" the presumption that the Superior Court's findings of fact were correct.

Channer draws to our attention two cases in which we have ordered a new trial when a critical witness had committed perjury during trial and the prosecution was presumed not to have had knowledge of the perjury. *See United States v. Wallach,* 935 F.2d 445, 455–59 (2d Cir.1991); *United States v. Seijo,* 514 F.2d 1357, 1364–65 (2d Cir.1975). Even assuming, *arguendo,* that the facts of those cases are indistinguishable or provide a weaker basis for rehearing than the factual findings in the instant case, we may not grant Channer's petition on the basis of those cases because the instant case arises under 28 U.S.C. § 2254, as amended by AEDPA, which requires that deference be accorded to state court findings of fact, whereas *Wallach* and *Seijo* each arose as a direct appeal from a conviction following a jury trial and verdict in a United States District Court. *See Wallach,* 935 F.2d at 449; *Seijo,* 514 F.2d at 1358. In those cases, the Court of Appeals considered the impact of witness perjury in the first instance and determined that, without the perjury, a different result at trial was probable. In this case, however, the Connecticut trial and appellate courts have already examined the impact of Lewis's perjury, and each has concluded that the trial was fair notwithstanding the perjury, and that the jury would not have reached a different outcome if the perjury had not occurred. In accordance with 28 U.S.C. § 2254, as modified by AEDPA, our review of the state court determinations of facts is limited to an inquiry into whether the conclusion of the state trial court was unreasonable based on the evidence presented and whether petitioner has presented evidence in the District Court that clearly and convincingly rebuts the presumption that the state court's factual findings are correct. The District Court undertook this inquiry and concluded that there was no basis for disturbing the state court's findings—a decision we believe is correct for the reasons stated above and by the District Court in its opinion of January 25, 2001.

**B.**

█ Channer raises a second argument—that the state court never made any findings "concerning Lewis's reaction when his brother showed him the photo of the man resembling Channer" shortly after the crime was committed—and implies that we should therefore make such a finding or remand for a hearing with respect to this issue. Pet'r's Br. at 10, 22–23.

Lewis testified at the post-conviction hearing that he had recognized Printo[4] and Fashion—the two individuals in the photograph shown to him by his brother Trey shortly after the crime was committed—as the actual perpetrators of the crime. The state court expressly found, however, that Lewis's uncorroborated post-conviction testimony—presumptively including his testimony about having recognized Printo and Fashion as the culprits—was "entitled to little credit." *Channer,* 1997 WL 584709, at *8. Channer claims that, had Trey been asked at the post-conviction hearing about Lewis's reaction when Trey had shown Lewis the photo of Printo and Fashion, Trey might have corroborated Lewis's testimony that Lewis immediately recognized the two men in the picture as the culprits. Channer speculates that the judge's repeated warnings about hearsay testimony effectively prevented any questioning of Trey about this matter.

This argument is without merit. First, the transcript of the post-conviction hearing indicates that Channer, despite asking Trey several questions about the picture of Fashion and Printo, never even tried to ask Trey what Lewis's reaction was when he was shown the photograph. *See* Tr. of 2/27/97 at 28–29. More importantly, a review of that transcript reveals that Lewis testified on cross-examination that, at the time Trey showed him the picture (shortly after the crime had been committed), he did not tell Trey that he recognized the two men. Instead, Lewis stated that he did not, until the day of Channer's trial, tell anyone—including Trey—that he had identified the two people in the photograph as the culprits.[5] Had Channer asked Trey at the post-conviction hearing what Lewis's reaction had been upon first seeing the photograph, there is no reason to believe that Trey's answer would have been helpful to Channer because Lewis had already testified that he did not tell Trey that he recognized the men in the picture. If Trey testified that Lewis had, in fact, affirmatively indicated that he recognized the men in the picture as the culprits, this testimony would have *contradicted* Lewis's testimony that he had not revealed his recognition to Trey, thereby impeaching Lewis and further undermining Channer's argument. It is true that the state court did not make an explicit finding regarding

---

**4.** Printo is sometimes referred to in the record as "Pinto."

**5.** The transcript of the cross-examination of Lewis at Channer's post-conviction hearing reads as follows:

> Q: Okay. At the time that picture was shown to you of the two individuals, your statement today is that you had already identified Mr. Channer as one of those people. You said you had gone to the police station already—
> A: Yeah, yeah.
> Q: And made that identification. When you saw that picture of the two individuals, did you decide in your mind that those were not the people or that those were the people?
> A: Those were the people.
> Q: You decided that in your mind when you saw it?
> A: Yup.
> Q Did you tell anybody that?
> A: I did tell the people the same day before the court that it wasn't them.
> Q: At the time you saw the photograph, sir, did you tell anybody?
> A: Did I tell—
> Q: That those were the people that were involved in the robber[y]?
> A: Anybody like who?
> Q: Well, you said your brother, for instance—
> A: Only—only told the people that was in charge of the case, that's all I told.
> Q: You never told anybody. Is that what you are saying, sir?
> A: I only told the people [who] was in charge of the case.

Tr. of 2/27/97 at 83–84.

Lewis's reaction when he was shown the picture of Fashion and Printo, but such a finding was not necessary in light of Lewis's own testimony that he did not tell Trey that he recognized the men. Thus, even if we assume for the argument that AEDPA would permit an evidentiary hearing in federal court to determine what Trey might have said if questioned about the matter,[6] such a hearing is not warranted because Trey's account of the matter could not possibly further Channer's argument in light of *Lewis's own testimony* about his reaction upon having been shown the picture.

### C.

Third, we address the possibility that evidence introduced by Channer on appeal, as part of a motion to enlarge the record in this case, might require an evidentiary hearing.[7] Channer submitted for our consideration four color photographs—three mug shots of himself and one picture of Printo (who resembles Channer and who Channer alleges was guilty of the crime)— that were used by Channer at his original criminal trial to ask Dawn Jones if the person depicted in one of the photographs, Printo, was responsible for the crime.

Jones responded "[n]o" and reaffirmed her view that Channer was the culprit. The pictures are significant because Channer had requested that the pictures be available during his examination of Jones in his post-conviction hearing on April 9, 1997, but in fact they were not produced. The judge at the post-conviction hearing told Channer that the photographs had not been marked as a "full exhibit" at trial— *i.e.,* an exhibit admitted into evidence at trial—and therefore were no longer available. Because Channer was not able to use the color photographs at his post-conviction hearing, he was forced to rely on a poor-quality black-and-white photocopy of the photograph while questioning Jones; the judge examined only that picture. Jones was not able to remember, looking at the black and white photocopy, whether she had viewed the photograph at the original criminal trial. However, upon investigating the status of the photographs in preparation for this appeal, Channer's able and conscientious attorney for his federal habeas appeal discovered that the photographs had been marked as a full exhibit at the original criminal trial, and were being stored at the Clerk's Office of the Superior Court in Hartford.[8] Rosen Aff.

---

**6.** 28 U.S.C. § 2254(e)(2) places certain restrictions on the ability of a federal court to order an evidentiary hearing in a habeas proceeding. The statute provides, in relevant part:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
> (A) the claim relies on—
> . . .
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have

found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

**7.** By letter dated October 2, 2002, Channer's counsel submitted to this Court a series of photographs that had not been submitted to the District Court. The Government filed a Motion to Strike or Exclude the photographs on October 2, 2002. In response, on October 9, 2002, defense counsel filed a Motion to Enlarge the Record on Appeal. We have granted defense counsel's Motion to Enlarge the Record and denied the Government's Motion to Strike.

**8.** Apparently, the photographs were not found originally because the judge presiding at Channer's hearing for a new trial directed a search only of the Clerk's Office in Tolland,

of 10/9/02 in Supp. of Mot. to Enlarge the Record on Appeal ¶ 2.ii.

■ With respect to Channer's request that we remand for a hearing at which the significance of the photographs in question could be examined, we assume without deciding that AEDPA would not prevent this Court from ordering an evidentiary hearing. The text of 28 U.S.C. § 2254(e)(2) is restrictive, see note 6, ante, and states that where there has been a "fail[ure] to develop the factual basis of a claim," § 2254(e)(2), a federal court may not hold an evidentiary hearing unless the petitioner can show both that the factual predicate for his present claim "could not have been previously discovered," § 2254(e)(2)(A)(ii), and that "but for constitutional error, no reasonable factfinder would have found [him] guilty," § 2254(e)(2)(B). However, in *Michael Wayne Williams v. Taylor*, 529 U.S. 420, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000),[9] the Supreme Court unanimously held that the restrictions of § 2254(e)(2) on a petitioner's ability to obtain a evidentiary hearing where there has been a "fail[ure] to develop the factual basis of a claim," see § 2254(e)(2), only apply when "there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel," *Williams*, 529 U.S. at 432, 120 S.Ct. 1479. Accordingly, where a petitioner has been diligent in developing his claim, the provisions of § 2252(e)(2)(A) and (B) that restrict his rights to an evidentiary hearing simply do not apply. In the words of the Supreme Court:

> The question is not whether the facts could have been discovered but instead whether the prisoner was diligent in his efforts. The purpose of the fault component of "failed" is to ensure the prisoner undertakes his own diligent search for evidence. Diligence for purposes of the opening clause [of § 2254(e)(2) ] depends upon whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court; it does not depend ... upon whether those efforts could have been successful.

*Id.* at 435, 120 S.Ct. 1479. Thus, if we were to conclude that Channer was diligent in attempting to obtain the photographic exhibits described above, but that through no fault of his own he was unable to do so—a conclusion that seems plausible in this case—then the stringent requirements of § 2254(e)(2) would not apply, and we would have the power to order an evidentiary hearing with respect to the photographs at issue.

■ But even assuming we could order an evidentiary hearing in the circumstances presented here, we decline to do so because we believe the photographs are not material to the Connecticut Superior Court's ultimate determination that Jones's testimony at Channer's post-conviction hearing was not credible. It appears that the exhibits were requested only for Channer's April 9, 1997 examination of Dawn Jones at his post-conviction hearing, and not for Channer's *previous* examination of Denzel Stewart (Trey) or Delroy Lewis on February 27, 1997 as part of the same hearing. Therefore, the only possible relevance of the photographs in

Connecticut, where that proceeding was taking place, but did not direct a search of the Clerk's Office in Hartford, Connecticut, where the original criminal trial had taken place and where the exhibits were ultimately found. *See* note 1, *ante.*

9. This case is not to be confused with the case *Terry Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), which also concerns the interpretation of certain provisions of § 2254 in the wake of AEDPA, and which was decided on the same day (April 18, 2000).

the post-conviction hearing would have been to expand the scope of Dawn Jones's recantation. If Jones had been able to recognize the color photograph of Printo, she might have said that she recognized Printo as the perpetrator and that she had lied at trial when she said she did not recognize him in the picture. However, the District Court did not even issue a certificate of appealability with respect to the Superior Court's decision not to credit Jones's recantation. The District Court thought it clear that the Connecticut Superior Court made a reasonable determination that Jones gave her testimony in fear and therefore was not credible. *See Channer*, 2001 WL 34056850, at *5-7. Even if Channer were now granted an opportunity to establish in the District Court what Jones's reaction to the photograph would have been if she had been shown these photographs at the state post-conviction hearing, and even if Jones responded favorably by recanting an additional aspect of her trial testimony, it would only broaden the scope of a recantation that the Superior Court determined to be "the product of fear and intimidation." *Channer*, 1997 WL 584709, at *8. The photographs that Channer has introduced on appeal do not bear on the dispositive finding of "fear and intimidation" that underlay the Connecticut Superior Court's decision—a decision deemed reasonable by the District Court. Accordingly, we conclude that there is no need for a factual hearing with respect to those photographs.

\* \* \* \* \* \*

We have reviewed all of Channer's arguments and found them to be without merit. For the reasons set forth above, the judgment of the District Court is affirmed.